### DESVERGERS v. PARSONS.

(Circuit Court of Appeals, Fifth Circuit. February 20, 1894.)

#### No. 92.

1. APPEAL—FINAL DECREE—EIGHTH EQUITY RULE.

A decree will be considered as final where the issues raised by the pleadings were all submitted for final adjudication, and, as entered, it shows that the court passed upon and adjudicated all the merits of the case, leaving nothing to be further disposed of except to carry it into effect, though by inadvertence no time was prescribed (Equity Rule 8) within which certain conveyances therein directed were to be executed.

2. REVIEW—DECREE ON BILL OF REVIEW.

A final decree, from which no appeal is taken within six months from the time of its rendition, can be reviewed in the circuit court of appeals only as to matters of law apparent on its face, on appeal from a decree rendered on issues raised by a bill of review brought to correct errors of law on the face of the decree.

Appeal from the Circuit Court of the United States for the Southern District of Georgia, Eastern Division.

On October 10, 1883, George Parsons filed his bill in equity against Maxime J. Desvergers, Thomas H. Harden, and Francis J. Ruckert, wherein he stated: That early in the year 1881—about January 1, 1881—he employed Desvergers as his agent, and that Desvergers acted as his agent during the whole of that year, and a portion of the following year. That for the purposes of such agency, and for other purposes, he supplied Desvergers with city bonds and money of the value of $34,133, for which Desvergers was to account to him, and that Desvergers had not accounted fully for

the same. That the object of Desvergers' agency was to acquire for him the capital stock and past-due second mortgage bonds and coupons, and claims against the Coast Line Railroad of Chatham county, Ga., and particularly the stock, bonds, and claims of said Ruckert, including a one-third interest held by Ruckert in the depot grounds of said railroad, and a claim of Ruckert's, amounting to $1,000, against said railroad for right of way, and another one-third interest in said depot grounds held by said Harden, and a promissory note for $3,500 and interest, of said railroad, held by said Harden, upon which said Ruckert and one Haywood were coindorsers with Harden, Harden, as indorser, having paid the note to the original holder; also,. $5,250 of said second mortgage bonds belonging to said Harden, and two-thirds of a claim of said railroad against its treasurer, Dillon, and his surety, which two-thirds had been assigned by said railroad company to said Harden and Ruckert; and also $532 of second mortgage, past-due coupons owned by said Ruckert. That he (Parsons) had verbally requested said Desvergers, early in January, at the inception of said agency, to purchase said stock of said Ruckert and others, including all of said bonds and coupons held by said Ruckert and others, for him, (Parsons,) "at and for such price or prices as said Maxime J. Desvergers should think fit;" and later on during said agency he verbally requested and authorized his said agent to agree with said Harden, "at and for such price or prices as said Maxime J. Desvergers should think fit," for the purchase for him (Parsons) of said properties of said Harden. That later on in the year 1881 he requested and authorized his said agent (his said agent having previously advised him to do so) to agree with said Ruckert for the purchase of said Ruckert's third in said depot grounds and right of way claim, and interest in said claim against Treasurer Dillon and surety, and all other interest of Ruckert's in said railroad company, and in return, and as the consideration for such purchase from Ruckert, to release Ruckert, on behalf of him, (Parsons,) from all liability as indorser upon said $3,500, and as indorser upon another promissory note of said company for $1,800. That, in pursuance of the request and authority so conferred upon him, his said agent, in January, February, and March, 1881, purchased from Ruckert seven shares of said railroad stock held by Ruckert, and also other shares of said stock, and delivered to him (Parsons) all of said shares, except seven; and said Desvergers bought from Ruckert and others thirty of said second mortgage bonds, of the face value of $7,200, and $532 of past-due coupons of the same serial numbers as said bonds, and delivered over the bonds, but not said coupons, and on or about August 25, 1881, his said agent agreed in writing to release said Ruckert as indorser upon said two notes, and, in return, the said Ruckert agreed in writing to transfer and convey to said Parsons the said right of way claim, claim against Treasurer Dillon and surety, and interest in said depot grounds, and all other interest Ruckert had in said railroad; and on August 25, 1881, his said agent also purchased from said Harden (by agreement in writing of that date) all of said properties which were to have been so acquired from said Harden. That his (Parsons') money was paid to said Ruckert, Harden, and others, as follows:

To Ruckert and others for said stock and bonds and coupons...$4,411 00
To said Harden in the value of city bonds and money......... 6,561 61

    Total .................................................$10,972 61

That said Harden has assigned and delivered to Desvergers, and Desvergers has turned over to him, (Parsons,) all that was bought from Harden, except the one-third interest in said depot lots, and that Harden is willing to convey the same to Parsons, but is prevented from so doing by Desvergers' false and fraudulent representations. That Ruckert has not transferred the right of way claim, nor seven shares of stock, nor third interest in said depot lots; and that said Ruckert should be made to do so, because, while he has never been formally released as indorser on said two promissory notes, Parsons, as owner of said $3,500 note obtained from Harden, was in a position to release him therefrom, and relying upon

Ruckert's said written agreement of August 25, 1881, and upon letters written in September, 1881, by Desvergers to him, he (Parsons) had made satisfactory arrangements with Haywood, the only other indorser upon said $3,500 note, and thereby released Haywood as indorser, which in effect released Ruckert. That Desvergers claims that Ruckert assigned and delivered over all but the third interest in the depot lots. That Desvergers has refused to come to a settlement with him, and account for the disposition of said agency money, i. e. $34,133, although he has long ceased to be agent. That he retains from Parsons the $532 of coupons, and has brought suit on them against said railroad. That he retains from Parsons the $1,000 right of way claim, and claim against Dillon and surety, worth $833.33; and that Harden and Ruckert each has not yet conveyed to Parsons or Desvergers his respective third of said depot grounds. The bill goes on to charge that Desvergers, in refusing to come to a settlement and turn over said retained property, claims that he made said purchases from Harden and Ruckert on his own account, including said release from said indorsements, and that Parsons guarantied him a claim of his for $1,500 against said railroad company for salary as director; and that Parsons and himself were partners in business, and he only retains his share of the profits, and that Parsons withholds from him a deed to an undivided half interest in a lot of land at Thunderbolt Point, in Chatham county, Ga.; and Ruckert pretends ignorance of the fact that Desvergers did not act for himself, but for Parsons, in releasing him from said indorsements, whereas Parsons contends the contrary, while admitting that he withholds from Desvergers the deed to the Thunderbolt Point property, but only as a partial protection to himself against Desvergers' attempts to defraud him out of said retained property of Parsons. Further: That the Coast Line Railroad Company resumed payment of its past-due second mortgage bond coupons on December 14, 1881, and that Desvergers ought not to be allowed to collect interest on said $532 of coupons, because the same were not then presented for payment. That Desvergers became superintendent of said railroad in 1882, Parsons then owning a large majority of the stock of said railroad, and, being principal owner, was principal loser in all losses of said company; yet he (Desvergers) in 1882 notified Parsons and the directors of said company that he intended to resign as superintendent, and thereby induced the company to employ another person as superintendent, then fraudulently refused to resign, thus making the company pay for two superintendents, and entailing a loss of several hundred dollars on Parsons. That Desvergers undertook to act as said Parsons' agent in the said purchase of capital stock and bonds and coupons of said company, in order to secure for himself employment as superintendent of said company, and to enhance the market value of certain property of Desvergers, then wholly unproductive, near the extra suburban terminus of said road, and produce an income therefrom, by bringing about the occupation of said property as a pleasure resort by the patrons of said company; and Parsons was caused fully to understand that Desvergers expected nothing for his said services as agent beyond his salary as superintendent and general manager of the affairs of said railroad, and the income from an increased value of said property. That Parsons, however, ventured some money in a cotton speculation, expecting to pay Desvergers the profits, but there was a loss and no profits. Then Parsons offered to pay Desvergers for his services what any three brokers in good standing in Savannah, Ga., would say Desvergers was entitled to for his services in said purchases and other business transacted for Parsons, but Desvergers would not agree to this. The bill prayed for account with Desvergers, discovery from Desvergers, Harden, and Ruckert as to all the matters contained in the bill, specific performance, injunction to restrain suit upon said coupons, and for relief appropriate to the matters alleged, and propounded sixteen interrogatories for Desvergers to answer, one for Harden, and eight for Ruckert, covering substantially every point in the bill.

To this bill, Desvergers made answer, admitting many of the statements of the bill, explaining others, and denying that the complainant was entitled to any relief under the circumstances of the case, a full history of

which, as Desvergers claimed it to be, being set forth in the answer, amended answer, and answers to interrogatories. Defendant Harden answered, setting forth the dealings between him and Desvergers, and showing that he dealt with Desvergers individually, and not as agent for Parsons, and that the contract entered into between him and Desvergers was an entire contract, with one entire consideration. Defendant Ruckert filed an answer, and subsequently an amended answer, showing that he dealt with Desvergers only, and not as agent of Parsons, and that he transferred his one-third interest in the depot lots in question to Desvergers before the filing of the complainant's bill. Thereafter defendant Desvergers, by leave of the court, filed a cross bill against the complainant, in which he sets forth the whole matter of the business relations which existed between him and Parsons, in which he claims $5,000 for his services to Parsons in regard to route No. 4, and $9,763.16 as per account annexed, and as an equivalent for the value of bonds, stock, claims, and interest acquired upon consideration moving directly from himself under the agreement between Parsons and himself. In this cross bill, Desvergers waives discovery from Parsons, and professes a willingness to assign to Parsons the two-thirds interest in depot lots and right of way claim upon being paid a just and fair value, to be ascertained by the court. The original complainant, Parsons, defendant in the cross bill, after demurrer overruled, answered the same by admissions, denials, and explanations, and giving another lengthy account of the agreements and transactions between Desvergers and himself. Thereafter, by leave of the court, the complainant filed an amended bill, asking relief with regard to certain choses in action alleged to have been purchased from Harden by Desvergers as his agent, and also by amended bill changed the prayer of the original bill so as to ask relief from Desvergers, in lieu of Harden and Ruckert, as to the transfer of certain depot lots of ground.

After considerable legal skirmishing with exceptions to answers of Desvergers for impertinence and insufficiency, and with references and demurrers, replications were filed on all sides and by all parties, and by order of court the whole matter at issue under the original and amended bills of Parsons and the cross bill of Desvergers, and the answers thereto, was referred to a standing master of the court, with directions to take the evidence, and report to the court conclusions both of law and fact, to which either party might take exceptions, as is usual in such cases.

The master reported, after reciting the pleadings and the answers of the parties to interrogatories, as follows:

"I find that the statement of Desvergers in regard to compensation for his services and his understanding of the contracts is, in the main, the correct one, namely: That he was to have the option of sharing in the bonds purchased to an extent not exceeding one-half of them, or was to be paid a fair compensation for his services, as he chose to elect. That he had this option on the bonds, see Parsons' letter of March 24, 1881, Desvergers' Exhibit A 1; also, Parsons' answer to cross interrogatory 18, folio 7. That he was not to be paid for these purchases by the difference between Parsons' limit and the price at which they were bought is shown by Parsons' letter of February 9, 1881, (Desvergers' Exhibit B 9;) also, Parsons' testimony, p. 20. I am equally clear that everything which Desvergers obtained in the trade with Harden and Ruckert while acting under his agreements with Parsons, and that he did not obtain anything as his own individual property; that the consideration of these purchases was Parsons' money, and the promise to hold the vendors harmless from their indorsements on the notes obtained in the trade, which promise has been ratified by Parsons. See Desvergers' answer to cross interrogatory 2, page 188; also, cross interrogatory 16, p. 234. His Exhibit 16, Letter Book, folio 168. It was admitted that the Mather's Point property and adjoining lot was the property conveyed to Parsons, and that the reconveyance should have been of a one-half undivided interest in both pieces, and not of Mather's Point alone. The Ruckert and Ott coupons, amounting to $536.00, were purchased after the cessation of his relation with Parsons. Desvergers has elected to be paid a fair compensation for his services, and not to share the bonds. T. H. Harden had completed

his part of his contract with Desvergers before this suit was filed. F. J. Ruckert had only to assign his right of way claim against the Coast Line Railroad. Desvergers has delivered to Parsons all the stock, bonds, and coupons acquired while acting under his contracts with Parsons, but retains the Harden and Ruckert interest in the depot lots, the Ruckert right of way claim, the Byck judgment, and the Thomas duebill. Parsons has failed to reconvey the undivided half interest in the back lot at Thunderbolt, known as the 'Springer Lot,' but since the filing of this suit has delivered the deed for the interest in the Mather's Point property. As against T. H. Harden, the complainant is entitled to no relief, and Harden should be discharged with his costs. F. J. Ruckert should be required to assign to the complainant his claim for right of way against the Coast Line Railroad, and then be discharged with his costs, as he was a mesne stakeholder between the parties. M. J. Desvergers should be required to transfer to Geo. Parsons the two-thirds undivided interest in the six depot lots obtained from Harden and Ruckert, to assign the Ruckert right of way claim if it has been assigned to him by Ruckert, the Byck judgment, and the Thomas duebill. As he has already assigned to Parsons the Anderson note of $3,500, to whom it of right belonged, there is no necessity for further steps in that behalf. Geo. Parsons should transfer to Desvergers an undivided one-half interest in the Springer lot at Thunderbolt.

"The final question of compensation to be paid to Desvergers is the one which presents the most difficulty. He claims that his services in purchasing bonds and in reference to the memorials for route No. 4 are worth $5,000.00. At the time when he entered into his contracts with Parsons he was earning a salary of $1,200.00 from the city of Savannah, and was receiving from outside sources from $1,500 to $1,700 more,—a total of nearly $3,000.00 per annum. He left this position, and undertook work with Parsons, for which he was to be paid, and was placed in the position of superintendent of the Coast Line Railroad, from which he obtained a salary of $1,200, with the promise from Parsons to increase the emoluments of that position from his own pockets to an amount not less than $1,800.00 nor more than $2,000.00. It is thus seen that Desvergers gave up a position in which he was earning nearly $3 000.00 to enter into business relations with Parsons where a salary of from $1,800 to $2,000.00 was assured to him, with compensation for services in purchasing bonds, etc., and in interesting himself and others in route No. 4. He was thus employed nearly two years. I think five thousand dollars would be full compensation for all services rendered during that time. He has received his salary as superintendent during this time, amounting to $1,400.00, which should be deducted from the above amount, and would leave a balance of $3,600.00, for which he should have a decree against the complainant, Geo. Parsons.

"The Ruckert and Ott coupons, amounting to $536.00, should remain the property of Desvergers. They were purchased after he had ceased purchasing for Parsons, were bought by him individually, and no consideration moving from Parsons entered into the purchase. Whatever may be the custom among brokers in reference to past-due coupons matters little in this case. The evidence is that the Ruckert bonds were purchased with these coupons attached. See Desvergers' test. 10th point, page 146, and Ruckert's answer. These bonds were the first ones purchased for Parsons. See his testimony, cross interrogatory 12. They were delivered to him without objection, in the condition in which they were bought, and he knew bonds were being bought with past-due coupons detached. See his testimony, page 9, ans. to 5th interrogatory. There is no evidence that the Ott bonds were ever purchased by Parsons, and naturally he cannot claim the coupons. Desvergers having omitted from his cross bill the allegation in regard to his claim for salary, as set out in his answer, this question is not passed on."

Parsons and Desvergers respectively filed elaborate exceptions to the adverse findings of the master, each attaching to his exceptions all the evidence relied upon to sustain his side of the case. The exceptions to the master's report, and the whole merits of the litigation, came on to be heard at the April term, 1888, when the cause was duly submitted to the court for decision. Two years later, at the April term, 1890, the court rendered a decree as follows:

"George Parsons, Complainant, v. Maxime J. Desvergers, Thomas H. Harden, Francis J. Ruckert, Defendants. Bill.

And

"Maxime J. Desvergers, Complainant, v. George Parsons, Defendant. Cross Bill.

"Final Decree, July 12, 1890.

"This cause came on to be heard at the April term, 1888, and was argued by counsel; and thereupon, upon consideration thereof, it is ordered, adjudged and decreed as follows, viz.:

"That the defendant Maxime J. Desvergers was the agent of George Parsons, as alleged by George Parsons in his original bill in this cause, and as such he is bound fully to account to said George Parsons, and to pay over to him whatever balance there is still in his hands held as such agent.

"That said Maxime J. Desvergers shall execute in due form, and shall deliver to said George Parsons, deeds of conveyance conveying to said George Parsons the legal title to two undivided third interests in fee simple absolute, which interest he acquired, as the agent of George Parsons, from Thomas H. Harden and Francis J. Ruckert, his codefendants in the original bill in this cause, in six lots of land situated in the city of Savannah, county of Chatham, state of Georgia, which are designated and known on the map or plan of the land of the estate of the late James M. Schley, made by John R. Tebeau, county surveyor of Chatham county, and dated August 15, 1872, as lots No. 45, No. 46, No. 47, No. 48, No. 49, No. 50, and which together constitute and form the rectangular tract or parcel of land on which are located the office, the car shed, and the stables of the Coast Line Railroad, and which is used by said railroad for depot purposes; and said tract or parcel of land is bounded on the north by Bolton street, on the east by the right of way of the Savannah, Florida and Western Railroad Company, on the south by a lane, and on the west by lot No. 51, as designated and known on said map or plat.

"That said Maxime J. Desvergers shall transfer, or cause to be transferred, to said George Parsons, upon the books of the Coast Line Railroad, seven shares of the capital stock of said Coast Line Railroad, which shares he acquired, as the agent of said George Parsons, from Francis J. Ruckert, one of the defendants in the original bill in this cause, yet never transferred to said Parsons.

"That Francis J. Ruckert, one of the defendants in the original bill in this cause, shall in due and proper form execute and deliver to said George Parsons a transfer and conveyance of the claim he holds against the Coast Line Railroad on account of said railroad's right of way through land owned or controlled by him, the right to which claim said Desvergers, as the agent of George Parsons, acquired from said Ruckert, who, however, has never transferred the same out of himself.

"That said Maxime J. Desvergers acquired the detached coupons in dispute in this cause after he had ceased to be the agent of George Parsons, and not as the agent of said Parsons, and he is consequently entitled to have and to hold the same to his own and exclusive use as his own property, free from the claim of the said George Parsons. That George Parsons, upon his receipt from Maxime J. Desvergers, and from Francis J. Ruckert, the conveyances and transfers herein required to be executed, made, and delivered to him, shall pay into this court, for Maxime J. Desvergers, the sum of one thousand dollars, in full for all the services claimed in the cross bill in this cause to have been rendered by said Desvergers for said Parsons in respect to any and all the matters and things, of whatsoever kind or sort, mentioned in said cross bill; and that George Parsons shall pay the unpaid balance of the fee and compensation of Geo. W. Owens, Esq., the standing master of the court, to whom this cause was referred, and that Maxime J. Desvergers shall pay the remainder of the costs incurred in this suit."

October 3, 1890, Parsons' solicitor filed a petition for amendment of the decree, so as to comply with the eighth equity rule, and prescribe the time within which Desvergers should execute and deliver to Parsons the deeds of

conveyance referred to in the decree, and also the time within which Desvergers should transfer to Parsons the railroad stock referred to, and the time within which Francis J. Ruckert should execute and deliver to Parsons the transfer and conveyance of the right of way claims referred to in said decree, which petition does not appear to have been acted upon. November 13, 1890, Parsons filed a bill of review against Desvergers and Ruckert, wherein he set forth the history of the case, recited the decree rendered at the April term, 1890, pointed out the failure to comply with the eighth equity rule, and prayed the court to review said decree, and to correct or supplement the same so as to make it conform to the eighth equity rule, and for general relief.

To this bill of review both defendants entered an appearance, but Desvergers alone answered, filing what he called an "answer and cross bill," wherein he admitted that the decree sought to be reformed does not conform to the eighth equity rule, suggests that it was the fault of complainant's solicitor, and informs the court that he does not contest the justice of reforming said decree, but submits that the costs of such reformation should be borne by complainant, and not by the defendant. The defendant, further in answer, requests the court to review that part of said decree (paragraph 3) which directs that he shall transfer, or cause to be transferred, seven shares of the capital stock of the Coast Line Railroad, in which connection defendant averred that it must have been an inadvertence that this matter was injected into said decree, and that such transfer is made by said decree a condition precedent to a recovery by the defendant of the compensation allowed him; and that he is thereby required to perform an impossibility, inasmuch as the said complainant, though requested by the defendant, has failed or refused to indicate the serial numbers of the shares referred to, or to produce the script for the same,—and much more to the same purport; concluding with a prayer that said portion of said decree may be eliminated therefrom, and further praying the court to review said decree, and to correct or supplement the same, to give the needed aid to the defendant, and for all other relief that may be necessary in the premises. Desvergers' answer was filed February 2, 1891. Without further proceedings apparent of record, on February 11, 1892, the court rendered what is denominated an "amended final decree," wherein the original final decree was amended so as to comply with the eighth equity rule, as prayed for by complainant, Parsons; and, in respect to the transfer of the seven shares of capital stock of the Coast Line Railroad directed to be transferred by Desvergers to Parsons, the original decree was amended so as to operate said transfer by the force and effect of the decree itself, practically as prayed for by the defendant, Desvergers.

On the 29th of February, 1892, Desvergers notified Parsons of the execution by him (Desvergers) of the deed of conveyance of the land mentioned in said decree, without prejudice to his right of appeal from said decree. August 6, 1892, Ruckert waived his right of appeal, stating that he was only a nominal party to the proceedings, and thereupon Desvergers appealed to this court from the amended final decree, assigning as errors to be reviewed all the findings in the said decree favorable to Parsons and adverse to himself, without reference to whether the same were adjudicated in the decree of July 12, 1890, or in the decree rendered on the bill in review February 11, 1892.

W. R. Leaken, for appellant.

George A. Mercer, for appellee.

Before PARDEE and McCORMICK, Circuit Judges.

PARDEE, Circuit Judge, (after stating the facts as above.) The master's report shows that all the matters in controversy between Parsons, the original complainant, and Desvergers, the main defendant and cross complainant, (and between them and all other parties,) raised by the original bill, amended bill, answers, cross bills, and replications, were submitted to and reported on by him; the

exceptions to the master's report show that all the said issues were submitted to the court at the April term, 1888, for final adjudication; and the decree of July 12, 1890, shows that the court at that time passed upon and adjudicated all the rights and matters in controversy,—all the merits of the case,—leaving nothing to be further disposed of, or in any wise open, except to carry the said decree into execution. The decree itself was intended to be final, and was complete and formal in every respect, except that by inadvertence the eighth equity rule in respect to the execution of the decree was not complied with, no time being therein prescribed within which certain conveyances and transfers ordered to be made by Desvergers and Ruckert should be executed. The decree meets all the requirements of a final decree, as it terminates the litigation on the merits of the case, and settles the rights of all parties. Many cases can be cited in support of this conclusion, from Ray v. Law, 3 Cranch, 179, down to McGourkey v. Railroad Co., 146 U. S. 536–569, 13 Sup. Ct. 170, where the cases respecting final and interlocutory judgments are reviewed, and the distinctions between them pointed out. We content ourselves with citing Grant v. Insurance Co., 106 U. S. 430, 1 Sup. Ct. 414, where it is declared that "the rule is well settled that a decree, to be 'final,' within the meaning of that term as used in the act of congress giving this court jurisdiction on appeal, must terminate the litigation of the parties on the merits of the case, so that, if there should be an affirmance here, the court below would have nothing to do but execute the decree it had already rendered."

Section 11 of the act of congress to establish circuit courts of appeals, by which this court is created and its jurisdiction determined, provides "that no appeal or writ of error by which any order, judgment or decree may be reviewed in the circuit courts of appeals under the provisions of this act, shall be taken or sued out, except within six months after the entry of the order, judgment or decree sought to be reviewed." In this case the decree appealed from was rendered on February 11, 1892; it was rendered on the issues raised by a bill of review brought to review and correct errors of law on the face of the decree rendered July 12, 1890. Under such a bill of review, no inquiry can be made into the evidence of the case in order to show the decree to be erroneous in its statement and finding of facts. See Freeman v. Clay, 2 U. S. App. 254–267, 2 C. C. A. 587, 52 Fed. 1, where the rule is recognized and authorities collated. The issues made by the bill of review in this case and the answers thereto are solely in regard to matters of law apparent upon the face of the decree. The decree deals only with such matters of law, and in no respect deals, or attempts to deal, with matters based upon the evidence in the case. The appellant assumes that the decree of July 12, 1890, was not a final decree, and that, no final decree being rendered in the case until February 11, 1892, his present appeal brings before us for review the entire case, and permits us to inquire into the evidence, and determine whether the findings of the master and of the court upon the merits of the case were correct or not. As we have shown,

the decree of July 12, 1890, was a final decree, and, as no appeal was taken therefrom within six months from the time of its rendition, it can only be reviewed in this court, as in the court below, upon the bill of review which was filed in the case, which bill of review, as we have seen, opens up only matters of law apparent on the face of the decree. As to such matters there are no errors which need serious consideration. The decree appealed from is affirmed.