### FRANCE & CANADA S. S. CO. v. FRENCH REPUBLIC.*

(Circuit Court of Appeals, Second Circuit. November 6, 1922.)

No. 32.

1. **Appeal and error ⬯76(1)—What constitutes "final judgment;" "final decree."**

    A final judgment or decree is one which puts an end to the suit, deciding all points in the litigation between the parties, leaving nothing to be judicially determined, with nothing remaining to be done, but to enforce by execution what has been determined.

    [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Final Decree or Judgment.]

2. **Admiralty ⬯103—Decree dismissing cross-libel is not appealable as "final decree."**

    A decree in admiralty which dismisses a cross-libel, like a decree in equity which dismisses a cross-bill, is not a final decree which ends the litigation of the cause before the court, but is merely auxiliary to the final determination of the cause and is not appealable.

Appeal from the District Court of the United States for the Southern District of New York.

Suits in admiralty by the French Republic against the schooner Jane Palmer and against the schooner Singleton Palmer; the France and Canada Steamship Corporation, claimant. From a decree dismissing its cross-libels, claimant appeals. Appeal dismissed without prejudice.

For opinions below, see 270 Fed. 609; 275 Fed. 719.

⬯For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Certiorari denied 43 Sup. Ct. 361, 67 L. Ed. ——.

Patterson, Eagle, Greenough & Day, of New York City (J. Culbert Palmer and C. D. Francis, both of New York City, of counsel), for appellant.

Kirlin, Woolsey, Campbell, Hickox & Keating, of New York City (W. H. McGrann, of New York City, of counsel), for appellee.

Before ROGERS and MANTON, Circuit Judges, and AUGUSTUS N. HAND, District Judge.

ROGERS, Circuit Judge. This suit was brought by the French Republic in admiralty against the schooner Jane Palmer in rem and against the schooner Singleton Palmer in rem in September, 1920, for recovery of damages to the cargo owned by the French Republic and carried by the schooners on voyages from New York to France. It was claimed that the cargo carried by the Jane Palmer had been damaged to the amount of $54,482.02, and that the cargo carried by the Singleton Palmer had been damaged to the amount of $48,581.22. The vessels sailed from the port of New York in the spring of 1917.

The France & Canada Steamship Company, which is a corporation organized under the laws of the state of New York and having its principal place of business in the city of New York, filed claims and stipulations of value in each suit. And on November 12, 1920, it filed its answers to the original libels and also filed cross-libels against the French Republic, demanding payment of the sum of $133,972.93 for the alleged breach of the contracts of affreightment including the bills of lading therein specified. It alleged that in and by the said contracts the French Republic had agreed to furnish to be transported from a United States port to a French port a total quantity of 100,000 tons of a specified cargo which the libelant agreed to carry. It alleged that in order to induce the libelant to carry the cargo upon the terms and conditions and at the rates specified in the contracts the French Republic agreed to pay libelant "for all damages caused by detainments, restraints, arrests, destruction, damage and capture of libelant's vessels engaged in transporting the 100,000 tons of cargo therein specified, by kings, princes and peoples in the prosecution of the war then going on between France and her allies and Germany and her allies, in words, to wit:

"The War Administration [respondent] agrees to assume the war risk on vessels engaged in the transportation of this merchandise by the France & Canada Steamship Corporation. The value of vessels will be calculated at the rate of £10-0-0 (sterling) per ton deadweight."

And it is alleged that the French Republic, the respondent, in the prosecution of the war detained and compelled said vessels to remain at the French ports for the periods specified, waiting for respondent's war vessels to convoy them out to sea and protect them from damage, destruction, or capture by Germany and her allies, to libelant's damage in an amount aggregating $133,972.93. The damages resulting from the alleged detention of the Jane Palmer amounted to $11,277.18 and those arising from the detention of the Singleton Palmer amounted to $22,469.95. The balance of the amount claimed in the cross-

libels arose from the detention of four other vessels belonging to the libelant, which had been engaged in transporting merchandise to France under the same contract and which had been similarly detained in French ports by the French Republic.

The libelant moved to stay proceedings on both libels until the French Republic should appear and give proper security in the cross-suit. Thereupon the French Republic appeared specially for the purpose of opposing the motion, and also for excepting to the cross-libel and the answers to the libel, and moved to dismiss the cross-libels. The court below, the matter being twice argued before it, 270 Fed. 609 and 275 Fed. 719, entered a final decree sustaining the exceptions to the cross-libels and dismissing them. It is from this order that this appeal is taken.

The first question to be considered is whether the order entered dismissing the cross-libels is a final decree in the sense that an appeal lies therefrom to this court before the determination of the original libels has been made. Counsel for the French Republic, the appellee herein, has urged in the argument in this court that the appeal is premature; that as the order made did not determine wholly the controversy between the parties now pending in the District Court, it cannot be regarded as a final order from which an appeal can be taken.

The Judiciary Act of 1789 (1 Stat. 73) confined the appellate jurisdiction to final judgments and decrees in the cases specified. As was said by Mr. Justice Lamar in McLish v. Roff, 141 U. S. 661, 665, 12 Sup. Ct. 118, 35 L. Ed. 893, the object and policy of Congress in relation to appeals and writs of error from the beginning of our judicial system has been to save the expense and delays of repeated appeals in the same suit, and to have the whole case and every matter in controversy in it decided in a single appeal.

At common law no writ of error could be brought except on a final judgment. Bacon's Abr. Error, A, 2. In 2 Tidd's Practice, 1162, it is said that, "if the writ of error be returnable before judgment is given, it may be quashed on motion." And in Metcalf's Case, 6 Coke, 68, decided in the reign of King James I, it was held that a writ of error would not lie till the whole matter had been determined, and that "the whole record ought to be either in the Common Pleas or in the King's Bench," and "cannot be there and here likewise."

In the federal courts in actions at law a writ of error only lies from final judgments which dispose of the entire case. Thus in Holcombe v. McKusick, 20 How. 552, 554 (15 L. Ed. 1020), Mr. Justice Nelson, speaking for the court, said:

"It is the settled practice of this court, and the same in the King's Bench in England, that the writ [of error] will not lie until the whole of the matters in controversy in the suit below are disposed of. * * * The cause is not to be sent up in fragments."

And this court has held that if two causes of action are alleged in one complaint, and a demurrer is sustained to one cause of action, no writ of error lies until the determination of the issues on the second cause of action. Even if one cause of action is separate from the other, both are in one suit, and it is necessary to dispose of both before a

writ of error lies. The case cannot be in this court and in the District Court at the same time. It cannot be "there and likewise here." Sheppy v. Stevens, 200 Fed. 946, 948. And see United States v. Beatty, 232 U. S. 463, 34 Sup. Ct. 392, 58 L. Ed. 686.

In equity the same principle is applied and an appeal only lies from a final decree which disposes of the whole cause. Dainese v. Kendall, 119 U. S. 54, 7 Sup. Ct. 65, 30 L. Ed. 305; Talley v. Curtain, 58 Fed. 4, 7 C. C. A. 1; Desvergers v. Parsons, 60 Fed. 143, 8 C. C. A. 526; Marden v. Printing Press Co., 67 Fed. 809, 15 C. C. A. 26; Western Electric Co. v. Williams-Abbott Co., 108 Fed. 952, 48 C. C. A. 159; Maas v. Lonstorf, 166 Fed. 41, 91 C. C. A. 627; 2 Bates on Federal Equity Procedure, § 803. In respect to appeals a difference in practice existed in the English chancery courts, where appeals were permitted to be taken from interlocutory orders of the Chancellor to the House of Lords, while in the chancery courts of the United States the right was restricted to final decrees. McLish v. Roff, 141 U. S. 661, 665, 12 Sup. Ct. 118, 35 L. Ed. 893. But the Act of March 3, 1891, creating the Circuit Court of Appeals and defining its jurisdiction, gave to the court the right to pass upon interlocutory orders or decrees. 26 Stat. 826. That provision introduced, as Judge Taft said in Dreutzer v. Frankfort Land Company, 65 Fed. 642, 644, 13 C. C. A. 73, a novelty in federal appellate procedure.

And a decree dismissing a cross-bill is not a final decree, and therefore not the subject of an appeal. It simply disposes of a proceeding which is incidental to the principal matter in litigation, which can only be reviewed on an appeal from the final decree. Ayres v. Carver, 17 How. 591, 15 L. Ed. 179. The rule applied in writs of error and in appeals in equity applies with the same vigor in appeals in admiralty.

In Bowker v. United States, 186 U. S. 135, 22 Sup. Ct. 802, 46 L. Ed. 1090, the question was whether the Supreme Court had jurisdiction to review an order dismissing a cross-libel before the whole case had been heard and determined. The court dismissed the appeal, on the ground that it was without jurisdiction to hear it, as it was not a final decree. And in Oneida Navigation Corporation v. W. & S. Job & Co., 252 U. S. 521, 40 Sup. Ct. 357, 64 L. Ed. 697, which was a suit in admiralty, the Supreme Court declared:

"A case may not be brought here in fragments. This court has jurisdiction under section 238 of the Judicial Code, as under other sections, only from judgments which are both final and complete. * * * The case was not ripe for appeal."

And, although the objection had not been raised by the appellee, the court dismissed the appeal for want of jurisdiction. The court below had denied a petition filed by the claimant to bring in a third party as indemnitor. This was held not appealable in advance of any determination of the main issue. The denial of the petition was merely an incident in the progress of the case. So in Dayton v. The Schooner Monterey, 131 U. S. Appendix lxxx, 18 L. Ed. 169, the libel claimed condemnation of the cargo as well as of the vessel, and the decree as entered condemned the schooner but made no mention of the

cargo.  The court refused to entertain the appeal, saying through Chief Justice Chase:

"The decree, therefore, does not dispose of the cause and cannot be final. The appeal must therefore be dismissed, and the cause sent to the Circuit Court for the District of Maryland for further proceedings."

As in equity the bill and the cross-bill together constitute one suit, so in admiralty the libel and the cross-libel constitute but one cause, and the proper practice is to hear them together and enter a single decree.  Lehigh & Wilkes-Barre Coal Co. v. Hartford & N. Y. Transportation Co., 227 Fed. 1019, 141 C. C. A. 668.  But if, as is sometimes done, and as was done in the case now before us the cross-libel is dismissed and a separate decree is entered as to it, there is no right to appeal therefrom until the whole case has been heard and disposed of. There must be a final decree which ends the litigation.

[1] A final judgment or decree is one which puts an end to the suit, deciding all the points in litigation between the parties, leaving nothing to be judicially determined, with nothing remaining to be done, but to enforce by execution what has been determined.  La Bourgogne, 210 U. S. 112, 28 Sup. Ct. 664, 52 L. Ed. 973; Kingman v. Western Manufacturing Co., 170 U. S. 675, 680, 18 Sup. Ct. 786, 42 L. Ed. 1192; Dainese v. Kendall, 119 U. S. 53, 7 Sup. Ct. 65, 30 L. Ed. 305; Mower v. Fletcher, 114 U. S. 128, 5 Sup. Ct. 799, 29 L. Ed. 117; St. Louis, Iron Mountain & Southern Railroad Co. v. Southern Express Co., 108 U. S. 24, 28, 2 Sup. Ct. 6, 27 L. Ed. 638; Bostwick v. Brinkerhoff, 106 U. S. 3, 1 Sup. Ct. 15, 27 L. Ed. 73.

[2] A decree which dismisses the cross-libel, like a decree which dismisses a cross-bill, is not a final decree which ends the litigation of the cause before the court.  Such a decree is merely auxiliary to the final determination of the cause, as it leaves a right of the parties controverted in the particular case unadjudicated.  The litigation includes the right of the libelant to recover because of the alleged fault of the respondent.  But it also includes the right of the respondent to recover because of the fault of the libelant, and until both questions are determined the litigation between the parties cannot be regarded as terminated and the case disposed of.  It makes no difference that the libel is in rem and the cross-libel is in personam.  Neither does it make any difference that the libel is against two of the vessels, and the cross-libel involves damages caused to five other vessels; the subject-matter of the libel and the cross-libel grow out of one transaction.  The matter cannot be brought up in fragments, and cannot be reviewed in piecemeal.

The appeal is dismissed without prejudice.