101 N.J. Super. 404 (1968)
244 A.2d 514
JOSEPH T. CLARKE, JR., PLAINTIFF,
v.
AMOS BROWN, DEFENDANT. LESLIE C. LYON, PLAINTIFF,
v.
AMOS BROWN, ET AL., DEFENDANTS.
JOHN BALANETSKY, JR., PLAINTIFF,
v.
AMOS BROWN, ET AL., DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided June 5, 1968.
*408 Mr. Joseph A. Maressa argued the cause for Plaintiff Joseph T. Clarke, Jr. (Messrs. Maressa & Console, attorneys).
Mr. H. Hurlburt Tomlin for defendant Amos Brown (Messrs. Tomlin & Lewis, attorneys).
Mr. Joseph W. Clarke, Jr. for plaintiff John Balanetsky (Messrs. Field, Trimble & Clarke, attorneys).
MARIANO, J.S.C.
Plaintiff Balanetsky by motion seeks to intervene and, in the alternative, to restrain the Unsatisfied Claim and Judgment Fund (Fund) from making payment. The motion is submitted to the court for its determination on the following agreed stipulation of facts. The matters in brackets are supplied by the court.
"1. On September 1, 1965, plaintiff Joseph T. Clarke, Jr. was the owner and operator of a motor vehicle involved in an accident with a motor vehicle owned and operated by defendant Amos Brown. Plaintiffs Leslie Lyon and John Balanetsky, Jr. were passengers in the motor vehicle of Joseph T. Clarke, Jr. Notices of Intentions were timely filed, pursuant to N.J.S.A. 39:6-65, with the Unsatisfied Claim and Judgment Fund on behalf of Joseph T. Clarke, Jr., Leslie Lyon and John Balanetsky, Jr.
"2. Suit was instituted on behalf of Joseph T. Clarke, Jr. against Amos Brown [September 29, 1965], Docket No. L-2655-65 [Superior Court, Law Division, Camden County]; *409 and on behalf of Leslie Lyon against Amos Brown and Joseph T. Clarke, Jr. [October 19, 1965] in October, 1965, [in the same Court], and defendants were duly served.
"3. In April, 1966 [May 5, 1966], Judge W. Orvyl Schalick ordered the above two cases consolidated.
"4. In February, 1967 [January 25th] suit was instituted on behalf of John Balanetsky, Jr., against Amos Brown and Joseph T. Clarke, Jr. (Superior Court, Law Division, Camden County) Docket No. L-15758-66 and defendants were duly served.
"5. On March 23, 1967 Judge W. Orvyl Schalick denied a motion to consolidate all three cases on the grounds that said application was out of time.
[From the statements of counsel it appears that defendant Clarke in the Balanetsky suit made a motion to consolidate all three cases, which motion was denied on March 23, 1967. There is no such order in the file. The pleadings indicate that Balanetsky received notice of said motion. No countermotion to intervene was made by Balanetsky.]
"6. The plaintiff, Leslie Lyon, settled his claim with the Unsatisfied Claim and Judgment Fund for the sum of $3,250 in November 1967 [judgment entered November 29, 1967].
[From the oral argument the court was informed that judgment in the sum of $3,250 in favor of Lyon was entered on November 29, 1967, and an order to compel the Fund to pay was entered in January 8, 1968 and the same has been paid.]
"7. Plaintiff, Joseph T. Clarke, Jr., obtained a judgment by jury verdict on January 8, 1967 against Amos Brown in the amounts of $2,660 for property damages and $12,500 for personal injuries. [December 15, 1967].
[The motion to intervene and the motion by plaintiff Clarke to compel the Fund to pay were heard on April 5, 1968, at which time the court entered an order compelling the Fund to pay Clarke the statutory amount and at the same time withheld execution of the said order until the *410 disposition of Balanetsky's motion to intervene or to restrain payment.]
"8. Plaintiff, John Balanetsky, Jr., has not, to date, recovered a judgment, however, it is hereby stipulated and agreed that his claim would have a value in excess of $6,750, the balance remaining from maximum amount recoverable, $20,000, after a deduction of $10,000 for Joseph T. Clarke, Jr. and $3,250 for Leslie Lyon, but provided this stipulation is to be without prejudice to future procedural conduct of the Fund's defense of the Balanetsky claim, and it is to be limited to the needs of resolving a presently contemplated procedure to resolve claimed priorities to the Unsatisfied Claim and Judgment Fund's $20,000 maximum."
Plaintiff Balanetsky seeks to intervene pursuant to R.R. 4:37-1(b) which reads as follows:
"Upon timely application anyone shall be permitted to intervene in an action: * * *
(b) when the applicant is so situated as to be adversely affected by a distribution or other disposition of property which is in the custody or subject to the control or disposition of the court or an officer thereof; * * *." (Italics mine)
The main purpose of plaintiff's motion is to restrain the Unsatisfied Claim and Judgment Fund from making payment of the statutory limit of $10,000 to Clarke, Jr. (N.J.S.A. 39:6-73(c)(1)) and the $3,250 to Lyon until his claim, i.e. Balanetsky's, has been determined either by settlement or jury verdict so that he may share on a pro rata basis in the limited fund available under the provisions of N.J.S.A. 39:6-73(c)(2) which is $20,000.
R.R. 4:37-1(b) is patterned after Federal Rule 24(3) prior to its amendment in July 1966. Neither rule grants an absolute right to intervene. They provide that application to intervene must be "timely." The question of timeliness cannot be considered in vacuo. Whether an application to intervene is timely does not depend solely upon the amount of time that may have elapsed since the institution *411 of action by the moving party, although of course that is a relevant consideration. See 4 Moore's Federal Practice, p. 98. Other factors which must be considered in connection with timeliness are whether the granting of the motion would entail appreciable prejudice to the other parties or the court, and at what stage in the total proceedings the motion to intervene is made. State v. Lanza, 74 N.J. Super. 362, 372 (App. Div. 1962), affirmed 39 N.J. 595 (1963), appeal dismissed, certiorari denied 375 U.S. 451, 84 S.Ct. 525, 11 L.Ed.2d 477 (1964), rehearing denied 376 U.S. 935, 84 S.Ct. 697, 11 L. Ed 2d 655 (1964).
Balanetsky was injured in an accident which happened on September 1, 1965 and instituted suit on January 25, 1967. The motion to intervene was made on February 19, 1968, almost 13 months after institution of the suit, and heard on April 5, 1968. Within the said 13-month period, to wit, on December 15, 1967, plaintiff Clarke obtained a judgment based on a jury verdict in the sum of $12,500 for personal injuries. Within the same period plaintiff Lyon settled with the Fund for the sum of $3,250, and judgment was entered on November 29, 1967; an order to pay the same was executed on January 8, 1968. This judgment has been paid by the Fund.
Dismissal of a motion for intervention under R.R. 4:37-1 is within the discretion of the trial court and untimeliness is sufficient ground for denying the same. Tesseyman v. Fisher, 231 F.2d 583 (9 Cir. 1955). Also, intervention after judgment is not often granted. 4 Moore's Federal Practice, p. 99.
Clarke, Jr. and Lyon had obtained final judgments prior to the filing of the motion. A judgment is the official and authentic decision of a court of justice upon the respective rights and claims of the parties to an action or suit therein litigated and submitted to its determination. Black's Law Dictionary 4th ed. p. 977; Bullock v. Bullock, 52 N.J. Eq. 561, 27 L.R.A. 213 (E. & A. 1894).
*412 A final judgment is one which disposes of the subject matter of the controversy or determines the litigation as to all the parties on its merits. France & Canada S.S. Co. v. French Republic, 285 F. 290, 294 (2 Cir. 1922).
The first and most obvious consequence of a judgment is that it establishes an indisputable obligation and confers upon the successful party the right to issue execution or other process of the court for its enforcement. The right to use the process of court for its enforcement is a consequence which the law attaches to it. West Jersey Title & Guaranty Co. v. Industrial Trust Co., 27 N.J. 144, 150 (1958). Rights established by judgments of judicial tribunals are generally regarded as resting upon the firmest foundations, and this, mainly, because of the confidence reposed in their inviolability. Ibid.
The rights acquired by the plaintiffs Clarke, Jr. and Lyon are property rights which cannot be taken without due process of law. That such rights are property rights is unquestioned, and that they cannot be taken without due process of law is equally well settled. Collins v. Welsh, 75 F.2d 894, 99 A.L.R. 1319 (9 Cir. 1935). The characterization of a final judgment being a property right is substantiated in Shade v. Colgate, 3 N.J. 91, 95 and 96 (1949) wherein it was stated, "* * * when the time within which an appeal may be brought has expired, it ripens into an unchangeable contract, and becomes property, which can be disposed of or affected only by the act of the owner, or through the power of eminent domain. It is then beyond the reach of legislation affecting the remedy, because it has become an absolute right, which cannot be impaired by statute. * * *"
To permit Balanetsky to intervene at this stage of the proceedings would appreciably prejudice the rights of Clarke and Lyon. What the movant seeks is the right to share on a pro rata basis with Clarke and Lyon in the maximum statutory amount of $20,000. N.J.S.A. 39:6-73(c)(2). In accordance with the stipulation it is agreed that Balanetsky's claim has a value either by settlement or jury trial in excess *413 of $6,750. It is clear, therefore, that the total amount of all three judgments would exceed the $20,000 statutory limitation. I shall assume only for the purpose of illustration that the settlement or judgment of Balanetsky's action amounts to $15,000; the total amount of all three judgments would then equal $30,750. Using this figure as a basis for the pro rata distribution of the $20,000 statutory limit would result in reducing plaintiff Clarke's judgment of $12,500 to approximately $8,000, and plaintiff Lyon's judgment of $3,250 to approximately $2,000. Clearly, this would be prejudicial in that it would reduce the valuable property rights which each possesses through their final judgments. In addition, I think it is fair to assume that Lyon, who has long ago received the $3,250, has paid therefrom counsel fees, medical expenses, etc., and further, that the net sum which he received has since been put to useful purposes.
In light of the agreed factual situation I conclude that Balanetsky's application to intervene should be denied because it was not timely made as required, and further, that to allow intervention at this late stage of the proceeding would inflict appreciable prejudice on plaintiffs Clarke and Lyon.
The denial of plaintiff Balanetsky's motion to intervene necessarily precludes any need to determine his alternative motion, which seeks to restrain the Fund from making payment to Clarke and Lyon until his, i.e., Balanetsky's, claim is determined. Since movant's alternative motion raises an issue of first impression in our State and elsewhere, the court will proceed to adjudicate the same.
No authoritative decision or treatise bearing on this issue has been found after thorough research by the court and counsel.
Our courts have frequently stated that the underlying purpose of the Unsatisfied Claim and Judgment Fund, N.J.S.A. 39:6-61 et seq., is not to make every claimant whole but to provide some basic measure of relief from claimant's absorption of the entire economic loss occasioned by *414 the accident. Dixon v. Gassert, 26 N.J. 1, 8 (1958); Wormack v. Howard, 33 N.J. 139 (1960).
It has also been stated that the purpose of the Fund is to mitigate hardships caused by highway accidents for which uninsured and impecunious motorists are liable. Dietz v. Meyer, 79 N.J. Super. 194 (App. Div. 1963).
Where more than one person in any one accident is injured or killed, the Fund's liability is clearly limited by the following legislative mandate:
"N.J.S.A. 39:6-73. Limitation on amounts payable from fund.
No order shall be made for the payment, and the treasurer shall make no payment, out of the fund, of

* * * * * * * *
(c) The unsatisfied portion of any judgment which, after deducting $100.00 therefrom if the judgment is for damage to property, exceeds

* * * * * * * *
(2) The maximum amount or limit, subject to such limit for any 1 person so injured or killed, of $20,000.00, exclusive of interest and costs, on account of injury to, or death of, more than 1 person, in any 1 accident, * * *."
See also N.J.S.A. 39:6-69(b). This financial limitation is applicable in the instant case since all three plaintiffs were injured in a single accident.
Balanetsky's contention that he is entitled to a prorated portion of the $20,000 requires this court to look to the statute to find whether there is anything therein which will justify taking charge of the fund for the purpose of marshalling it for the benefit of all persons who may now, or who might at some future time have an interest therein. From a reading of N.J.S.A. 39:6-73(c)(2) and other pertinent sections of N.J.S.A. 39:6-61 et seq. I do not find any language which would indicate a legislative intent authorizing such action by the court. The Fund merely proposes to give to those who suffer injury through the negligence of an uninsured motorist some basic measure of relief through a special fund.
*415 Had the Legislature intended that the statutory amount should be shared proportionately by all persons who, within the time fixed by the statute of limitations, might sue and recover judgments against the uninsured driver, it would have definitely said so, or it would have provided that the amount should be for the benefit of every person injured to the extent of $10,000 per person. See Turk v. Goldberg, infra. To hold that the statutory amount is for the benefit of all injured persons pro rata would make it necessary for the Fund to ascertain, before it could safely pay anyone, how many persons might have claims therein, and what the total amount of judgments which might be presented would be. Settlements have a very high priority in our judicial system. In fact the act itself provides for the making of settlements. N.J.S.A. 39:6-72. Good faith settlements are encouraged in order to avoid or terminate litigation, and ofttimes a settlement by the Fund reduces the amount which it is called upon to pay. The practical effect of Balanetsky's contention would be to bar any settlement by the Fund, at least where more than two persons are injured in a single accident.
Where the wording of a statute is clear and explicit the court is not permitted to indulge in any interpretation other than that called for by the express words set forth. Duke Power Co. v. Patton, 20 N.J. 42 (1955). The duty of the court in construing statutes was clearly set forth by Mr. Justice Francis in Canada Dry Ginger Ale, Inc. v. F. & A. Distrib. Co., 28 N.J. 444 (1958):
"When language employed by the Legislature is clear and unambiguous, the interpretive function of the judicial branch of government is simple and confined. The law should be applied as written. Under our tripartite system of government, we cannot concern ourselves with matters of legislative wisdom or policy. If the constitutional power exists to promulgate the particular fiat, it must be accepted even if personally we believe it to be a legislative mistake. Nor can the judiciary under the guise of interpretation read into an enactment a more limited policy than that which is *416 clearly projected into action by the words of the lawmakers." (at p. 458)
Once a claimant recovers a judgment against an uninsured motorist is a court of this State, he must comply with certain statutory provisions before his claim will be satisfied by payment from the Fund. After the termination of all proceedings, including appeals, the judgment creditor must file a verified claim in the court where the judgment was rendered; N.J.S.A. 39:6-69. The court then considers this application summarily and if it is satisfied that the requirements of N.J.S.A. 39:6-70 have been met, it then issues an order pursuant to N.J.S.A. 39:6-71 directing the treasurer to pay the judgment.
What the Legislature has definitely and clearly stated is that one who establishes his claim by judgment against an uninsured driver shall proceed to collect from the Fund in accordance with the above provisions. Had the Legislature intended that the statutory amount should be shared proportionately by all persons who might sue and recover judgments against an uninsured driver it would have said so. To hold that the Fund is for the benefit of all injured persons pro rata would be contrary to the provisions of the statute respecting collection of judgments. This court cannot expand the provisions of a statute beyond the plainly expressed legislative intent. Eckert v. New Jersey State Highway Department, 1 N.J. 474 (1949). What plaintiff movant seeks, therefore, is a modification of the statute. Such a request should be addressed to the Legislature, the appropriate body for such a revision, and not to the courts. Mountain Lakes Board of Education v. Maas, 56 N.J. Super. 245 (App. Div. 1959), affirmed per curiam 31 N.J. 537 (1960), certiorari denied 363 U.S. 843, 80 S.Ct. 1613, 4 L.Ed.2d 1727 (1960).
Admittedly, the issue involved is novel. However there are several adjudicated cases in New Jersey, the rationale of which is applicable.
*417 In a case decided by our former Court of Chancery, Turk v. Goldberg, 91 N.J. Eq. 283 (Ch. 1920), the facts were as follows. The Jitney Act, L. 1916, p. 283 (now N.J.S.A. 48:16-23 et seq.), required the owner of a licensed auto bus to file an insurance policy in the sum of $5,000 with a designated official in order to insure against loss imposed upon the owner in any action for damages for bodily injury or death resulting from an accident. Subsequent to just such a mishap a succession of suits was brought, some of which were reduced to judgment at the time plaintiff, who had not yet reduced her claim to judgment, brought suit against the insurer to restrain it from paying any more judgments, $2,200 having been paid by that time. Plaintiff alleged, without substantial dispute, that the several suits were likely to total $30,000, and since the policy was issued for the benefit of all parties injured, the proceeds should be paid into court or to a receiver pending final judgment in all the suits to assure pro rata distribution. In denying relief the court proceeded on the theory that since plaintiff's claim was not yet reduced to judgment, it did not have the status of a lien on the proceeds, and that had the Legislature anticipated such a situation and intended a pro rata distribution, it would have said so expressly.
The case of Ward Trucking Corporation v. Philadelphia National Insurance Company, 4 N.J. Super 434 (App. Div. 1949), involved the destruction by fire of property consigned to plaintiff, an interstate carrier, and delivered by plaintiff to the premises of the City Line Express Company where the fire occurred. Plaintiff sued City Line and obtained a judgment for $2,999.69, which was not satisfied. Subsequently, plaintiff brought this action against City Line's carrier and obtained a judgment for the policy limit of $2,000. One of the issues raised by defendant on its appeal was whether plaintiff's recovery should be prorated with the other shippers whose property was also destroyed in the fire. The insurance policy had a $2,000 limit for all loss but was silent as to any provisions for prorated distribution. The court held *418 that the defendant was not entitled to limit plaintiff's recovery to a pro rata portion of the $2,000. The court said:
"It seems to us that in view of the omission from the endorsement of any express provision for prorating, the plaintiff's diligence, in contrast to the inaction of the other shippers or consignees, entitles it in this proceeding to a full recovery against the defendant." (at p. 440.)
In Liguori v. Allstate Insurance Co., 76 N.J. Super. 204 (Ch. Div. 1962), an automobile operated by Alfred Liguori was involved in a collision with a vehicle driven by Harold A. McDermott on January 26, 1962. As a result thereof Liguori's wife, who was a passenger in his car, and Nicholas Bonelli Jr., one of the passengers in the McDermott automobile, were killed. Shortly thereafter, actions were instituted by Liguori both individually and as administrator ad prosequendum of his wife's estate, and by Thomas Pederson, Jr., who was the other passenger in the McDermott vehicle. The McDermott automobile was covered by an Allstate Insurance policy in the amount of $10,000 for each injury and $20,000 for each accident. Prior to any disposition of the Liguori and Pederson claims, Allstate negotiated a settlement with the parents of decedent Bonelli in the amount of $8,000. Liguori then instituted proceedings directing defendant Allstate to show cause why it should not be restrained from consummating the $8,000 settlement with the Bonelli estate, and why it should not institute an interpleader action for the purpose of evaluating and rateably distributing the proceeds of the MeDermott insurance policy. One of Liguori's contentions was that unless consummation of the settlement was prevented by the court, a serious reduction of available proceeds to all prospective claimants would occur resulting in irreparable harm to plaintiff.
The court concluded that the order to show cause be discharged. Relying in part on Turk v. Goldberg, supra, it held that a pro rata distribution was not required. The court stated that the non-judgment claimant Liguori had no right *419 to interfere with the settlement distribution merely because such distribution would diminish the proceeds available under the policy. The court further indicated that this was especially true where to hold otherwise would interfere with the judicially favored policy of avoiding unnecessary expense and delay through settlement practice.
Applying the rationale of the foregoing cases to the instant case, it must be concluded that there is no right of a claimant to intervene in the distribution merely because such payment diminishes the fund. Thus pro rata distribution in the circumstances under consideration is not required.
By reason of the foregoing, that part of the order of the court dated April 9, 1968, restraining the payment by the Treasurer of New Jersey to plaintiff Clarke of the statutory amount of $10,000, is hereby vacated.