AMANDA ETTMAN, PLAINTIFF-RESPONDENT, v. CONTINENTAL INSURANCE COMPANY, DEFENDANT-APPELLANT.

AMANDA ETTMAN, PLAINTIFF-RESPONDENT, v. QUEEN INSURANCE COMPANY OF AMERICA, DEFENDANT-APPELLANT.

Argued February 7, 1936—Decided May 18, 1936.

For the appellants, *Arthur T. Vanderbilt.*

For the respondent, *Francis A. Stanger, Jr.*

The opinion of the court was delivered by

Hetfield, J. This is an appeal from judgments of the Supreme Court entered upon verdicts of a jury rendered in

favor of the plaintiff at a trial held in the Cumberland Circuit. The plaintiff instituted independent suits, and because the same questions of law and fact were involved in both cases, they were consolidated at the trial and also for review by this court.

The plaintiff sought to recover the loss occasioned by the burning of a frame dwelling situated near Alloway, Salem county, upon which the defendants had placed insurance. The fire occurred during the night of January 27th, 1934, at which time the plaintiff and her family were visiting a daughter in Salem. Each of the two policies involved contained a condition which provided in part "no suit or action on this policy, for the recovery of any claim, shall be sustainable in any court of law or equity * * * unless commenced within twelve months next after the fire." The summons in the Continental Insurance Company suit was tested March 15th, 1935, and in the Queen Insurance Company suit on March 16th, 1935.

The defendants contend, among other things, that there was error in the refusal of the trial court to grant defendants' motions for a nonsuit and directed verdict, because of the fact that the actions were not instituted within twelve months after the fire, as provided in the policies.

The plaintiff alleges that she was misled by the attitude and promises of the defendant's agents, to the effect that defendants would rebuild her house, and that she delayed bringing suit because she relied upon such representation.

It appears that two days after the fire had occurred, one Melville B. Horter, an adjuster for the defendants, called upon the plaintiff, and she testified with respect to his visit as follows:

"Well, he came in and he told me he was the adjuster. I asked him in and he came in and he said he had been out to the ruins and he said, 'now, Mrs. Eltman, you know that we don't pay any money, but you get an estimate from a builder and send it to us, and the sooner you send it to us the sooner we will put your place back.' I said, 'I don't want any money; I only want my home back.' * * * He told

me to get the estimate as quick as I could and there wouldn't be anything else that I could do, that the house would be put up just as quick as he could get the estimate; the quicker I got it, the better it would be."

The plaintiff further testified that on four or five occasions she called on Hubert C. Berry, an insurance agent at Salem, who issued and countersigned the policies in question, and inquired as to when her claim would be adjusted. On the first visit, she alleges his reply was "have patience." With respect to the last call, her testimony was as follows:

"Q. And the last time you were there he told you that they were not going to do anything about it? A. Yes, sir. Q. About when was that, Mrs. Ettman A. Well, I guess that was June or July. Q. About June or July of 1934? A. Yes, sir. Q. And at that time he told you he had heard from the companies? A. Yes, sir. Q. And they were not going to do anything about it? A. Yes, sir. Q. You are sure of that? A. Yes, sir. Q. And that conversation, you say, took place at Mr. Berry's office? A. Yes, sir."

Mr. Berry, when called as a witness on behalf of the plaintiff, testified, in substance, that the plaintiff called at his office on several occasions, the last visit being in the early spring of 1935, at which time she inquired as to what was being done about the adjustment of her fire loss, and he informed her, "I had nothing to do with it, it was out of my hands entirely."

The plaintiff admitted that she was informed on October 9th, 1934, that the defendants had settled with the mortgagees as to their interests under the policies; and it also appears that her attorney sent a communication on November 24th, 1934, to the agents of the defendants, at Camden, New Jersey, which stated in part: "May I be advised, when Mrs. Ettman may expect to receive the amount due her on her policies of insurance?"

We do not think there was sufficient evidence presented from which the jury could infer that the defendants waived, or were estopped from asserting, limitations. To warrant the application of the doctrine of estoppel, it must be shown that the conduct of the party against whom waiver of policy

limitations is claimed is such as to cause the adverse party to change his position by lulling him into false security, and causing him to delay or waive assertion of his rights to his damage. There is nothing in the present case to justify a finding that the plaintiff had been lulled into a false sense of security. Assuming, but not deciding, that the statement which the plaintiff alleges was made by Horton two days after the loss, constituted a promise to adjust her claim, she knew in June or July, 1934, or six months before the expiration of the limitation, that the promise was repudiated and that the company did not propose to make a settlement. She must also have known that when the interests of the mortgagees had been paid, the defendants did not intend to rebuild, and the letter forwarded by her attorney would indicate such knowledge.

We conclude that it was error on the part of the trial judge to refuse to take the case from the jury, and the judgments under review are therefore reversed.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, LLOYD, CASE, BODINE, DONGES, HEHER, PERSKIE, HETFIELD, DEAR, WELLS, WOLFSKEIL, RAFFERTY, JJ. 13.