EDITH RYNAR, WIFE OF DAGO RYNAR, AND DAGO RYNAR, PLAINTIFFS-RESPONDENTS, v. LINCOLN TRANSIT CO., INC., A CORPORATION OF THE STATE OF NEW JERSEY, AND FRANCIS J. OGBOURN, DEFENDANTS-APPELLANTS, AND ZENTZ MOTOR LINES, INC., A CORPORATION OF THE STATE OF MARYLAND, CHARLES L. CROSS, JR., AND FRANK DeORGE, DEFENDANTS.

Argued October 21, 1942—Decided February 8, 1943.

For the plaintiffs-respondents, *David T. Wilentz* and *Milton Miller*.

For the defendants-appellants, Lincoln Transit Co., Inc., and Francis J. Ogbourn, *Charles A. Rooney* and *Gustave A. Peduto.*

The opinion of the court was delivered by

CASE, J. · The appeal is from a judgment for the plaintiffs and against the appellant defendants, Lincoln Transit Co., Inc., and Francis J. Ogbourn, entered upon a jury verdict rendered at the Middlesex Circuit of the Supreme Court. Plaintiff Edith Rynar was a passenger on an automobile bus owned by Lincoln Transit Co., Inc., and driven by Ogbourn, an employee of the corporate owner. There was a collision between the bus and an automobile truck-and-trailer, and in that collision Mrs. Rynar received the injuries upon which she and her husband, joining *per quod,* recovered the judgment under appeal. The suit was against the appellants and also against Zentz Motor Lines, Inc., as owner of the trailer, Charles L. Cross, Jr., as owner of the truck and as in control of the truck-and-trailer, and Frank DeOrge, as employee of Cross and driver of that unit. The jury returned a verdict of $40,000 for the wife and $10,000 for the husband against the bus owner and driver and a general verdict of no cause of action in favor of the other defendants. Lincoln Transit Co., Inc., and Ogbourn, reserving exceptions, sued out a rule against the verdict as excessive and as a result the court ordered and the plaintiffs consented that the $40,000 verdict for Mrs. Rynar should be reduced to $18,000 and that the $10,000 verdict for Mr. Rynar should be reduced to $7,000. Judgment was accordingly entered for an aggregate of $25,000.

The accident happened at about eleven o'clock at night May 24th, 1940, on Route 25 in Raritan Township, Middlesex County. The highway at that point contains four lanes divided by a slightly elevated safety isle into two two-lane highways, one for the east-bound and the other for the west-bound traffic. The truck-and-trailer had been off the highway on the grounds of a small gas station where two gas pumps set parallel with the highway afforded space for parking facilities on either side, that is, either between the pumps

and a fringe of stones which set the private grounds off from the road shoulder or between the pumps and the gas station building. The truck-and-trailer had been on the right or building side of the pumps; had been parked there while a mechanic was summoned from a neighboring garage and repaired a clutch spring. There is evidence to sustain a finding that because of the physical limitations, such as the size of the lot, the arrangement of the driveway, the location of the pumps and of the border of the drive, and the overall length of the truck-and-trailer (about thirty-five feet), it was necessary for that combination vehicle, in returning to the highway, to travel a wide arc before straightening out; that, in effect, for a short distance, the movement was a crossing of the line of the traffic moving in the direction in which all parties were headed, that is, away from New York and toward Baltimore. The weather was heavy; it had been raining very hard; the pavement was wet. At the moment there was not considerable precipitation, but there was a drizzle that required the use of windshield wipers. There is evidence sufficient, if believed, to sustain a finding that as the bus drew near the location the truck-and-trailer had emerged from the service station grounds, had come onto the highway, swung in a curve across the slow lane into the fast lane, had partially straightened out, and was moving back toward the slow lane but nevertheless so occupied the entire roadway that another vehicle coming from the rear could not pass and that there were no lights anywhere on the unit; further, that the bus driver, coming up from behind, was unable, because of the heavy weather and the absence of lights on the truck-trailer unit, to see the obstacle until at so short a distance that he was afraid to brake lest his vehicle skid on the wet roadway, wherefore, to avoid a collision, he undertook to mount the safety isle, succeeding with the front wheels but not with the rear wheels, and that the collision ensued. There was also evidence *contra* to that recited in the last preceding sentence, but the knowledge that there was evidence of the sort just described is necessary to an understanding of some of the points alleged as error.

Appellants' first point is that the trial court erred in evi-

dence rulings. Certain of these rulings admitted questions put to four of the witnesses during their cross-examination by the attorney for the truck-trailer group. The questions were intended to, and did, elicit the testimony that the witnesses, who had been passengers on the bus, had made money settlements with the bus company for damages that had been caused by the accident presently sued upon. The cross-examiner asserted that the settlements had resulted in an interest or bias on the part of the respective witnesses, and it was upon that hypothesis that the questions were sustained. The contention of the appellants is that, notwithstanding a cautionary charge to the jury administered at the appellants' request, the testimony was brought forth for the purpose of convincing the jury that the bus company had admitted liability in the case, that it was harmful in that respect and that the admission was therefore error. A correlated question was posed in *Miller* v. *Thomas & Son Co.*, 89 *N. J. L.* 364, but was not decided for the reason that in that case the witness on direct examination had given testimony on which the question of settlement was deemed to be fair cross-examination.

It is proper in cross-examination to probe a witness as to interest or bias, *Klie* v. *Hollstein,* 98 *N. J. L.* 473, 478; *Haver* v. *Central Railroad Co.,* 64 *Id.* 312, and the extent of the examination ordinarily rests within the sound discretion of the trial judge subject to review for abuse, *State* v. *Quinlan,* 86 *Id.* 120, 131. But if the question is not relevant to the issues of the cause and has no tendency to show interest or bias, it should be excluded. *State* v. *Mangino,* 108 *Id.* 475, 480. If the evidence is legal for one purpose but incompetent for another, it will be admitted and the party disadvantageously affected may summon the court's assistance by request to charge or other appropriate means. *Perry* v. *Levy,* 87 *Id.* 670. However, there is a general rule that settlements and compromises are not in themselves evidence as admissions of liability. *Hawthorne* v. *Eckerson Co.* (appeal from United States District Court, Vermont), 77 *Fed. Rep.* (*2d*) 844. (See particularly the discussion in the dissenting opinion which seems to be a concurrence with the majority view on this point.) Attempts at compromise have

long been favored in the law. 3 *Blk. Com.* 299. "The rule undoubtedly is, that an offer to pay any sum by way of compromise of a pending controversy, is not to be given in evidence against the party making it. This rule is founded in policy, that there may be no discouragement to amicable adjustment of disputes, by a fear, that if not completed, the party amicably disposed may be injured." *Gerrish* v. *Sweetser,* 4 *Pick.* 373, 377. The law favors compromises and because it favors them does not permit the bare fact of their occurrence to be interpreted as a guilty admission. It is clear—and there is no contention otherwise—that the disputed evidence of settlements was not admissible for the purpose of building up a case of liability against the bus company or its driver. On the other hand, if the testimony upon which a witness was being cross-examined was the misshapen product of a prejudiced mind, the cross-examiner was entitled to show it.

The fact that a witness had earlier had a claim against the bus company arising out of the accident and had settled the claim for a money payment does not show present interest or a fact from which present interest may be fairly inferred. If a person has a claim, he has, of course, an interest. But if his claim is paid and he gives a release, the incident is closed. The interest no longer exists. That leaves the question of bias. Is there in the bare fact of an accomplished settlement of a *bona fide* claim direct proof or bias? If not, are there in the proofs other incidents which added to the fact of a money settlement would fairly sustain a finding of bias? Those are inquiries which the trial judge must address to himself because the duty rests upon him to see that the admission of irrelevant testimony potentially harmful to one party is not admitted at the instance of another party upon some asserted, but unsupported, theory of admissibility. We are moved to treat the matter with gravity because it is obvious that the jury was incited by some ill-grounded conception to a verdict that was shockingly excessive. We consider that a verdict (for husband and wife) of $50,000 upon the damages shown in the proofs is so far from reasonable as to evince mistake or prejudice on the part of the jury sufficient to destroy confidence in the entire finding. The trial court was

clearly impressed by the injustice of the jury action and reduced the award by one-half; but doubt persists whether a finding so thoroughly out of consonance with the facts was reached with the care and deliberation which are due to every litigant and whether there was perhaps some misconception in the minds of the jury as to the factors upon which a verdict should turn. We are not persuaded that the rulings under consideration show an abuse of discretion by the trial judge; but the case will need, upon other grounds, to go back for retrial, and we have deemed it proper thus to state our views for the guidance of court and counsel.

The following question was put by the same cross-examiner to Francis Ogbourn, the bus driver and joint defendant with the bus company:

"It is a fact, isn't it, Mr. Ogbourn, that shortly after the accident in which you were unfortunate enough to be involved that you were discharged or laid off, or whatever the term is?"

Clearly the purpose was to show, by proving the subsequent attitude of the bus company toward the driver, an implied admission by the company that the driver had been negligent. The answer, while not conceding a lay-off, did show a permanent severance of the relations of employer and employee and may have been distinctly harmful to both of the appellants. Evidence that a driver has been discharged soon after an accident is not competent as an implied admission that the driver had been careless. *Hewitt* v. *Tauton Street Railway Co.* (Mass.), 46 *N. E. Rep.* 106; *Gillet* v. *Shaw* (Mass.), 104 *N. E. Rep.* 719.

Two faults are said to be presented by the court's charge. The court charged:

"Ladies and gentlemen, I charge you that these plaintiffs are entitled to verdicts. They are entitled to verdicts against one or both. And I speak of one or both of these defendants in this fashion: I speak of the Lincoln Transit Company and Mr. Ogbourn as one defendant, and the Zentz Motor Lines, Mr. Cross and Mr. DeOrge as the other."

The direction was repeated in other language. The complaint alleged negligence on the part of all defendants, and all of the defendants made answer. There were two

separate and disconnected answers, one by the appellants herein and the other by the truck-trailer group. The first denied the entire complaint insofar as it related to those defendants and contained also, as separate defenses, that those defendants were guilty of no negligence which was the sole and proximate cause of plaintiff's injuries or damages and that any injury or damage sustained was caused by the negligence of the other group. The answer filed by the latter group admitted certain parts of the complaint, denied other parts and contained several defenses among which were that the answering defendants were guilty of no negligence and that the accident was caused by the negligence of the first group. It is truly remarked that neither answer sets up that the plaintiffs were not entitled to recover from somebody; but that is of no avail because each defendant pleads that he was not negligent, and no defendant could make ground for the plaintiffs by alleging that any other defendant was negligent. It was still for the plaintiffs to prove negligence against the one whom it would hold to liability, and there was nothing in the answers that would justify a charge that a verdict should be awarded against one or both of the defendant groups. In concluding that the plaintiffs had a proved claim against some of the defendants the court ruled out the possibility that the cause presented an instance of *damnum absque injuria,* as that the first group of defendants, as it alleged and produced evidence to prove, was without negligence and that the second group, as it alleged and produced evidence to prove, was without negligence and that the accident was due to conditions of the road and weather over which none of the parties had control. If such a combination of events was improbable, the decision was nevertheless one of fact and therefore for the jury. But a more fundamental error in the charge is that the court undertook to direct a judgment in favor of the plaintiffs without being able to specify, or at least without specifying, the defendant or defendants against whom the direction was effective. When A sues B and C and the court directs a verdict in favor of A and against B, the court assumes the responsibility as a matter of law and B is protected because, on appeal, he can,

again as a matter of law, reverse the judgment if upon any view of the facts a conclusive case was not proved against him. So, too, as to a direction against C or against B and C or in favor of B and C or either of them against A. But there is no protection in the form of direction here pronounced because the jury is given a discretionary agency in carrying out the court's direction, and there is no appeal from the jury's finding of fact because there was evidence which, if believed, would sustain the finding.

A further error is alleged in that the court charged as follows:

"There has been considerable testimony with reference to lights on this trailer. Some of that testimony, I think principally by occupants of the bus, was to the effect that they did not see any lights. Now, that is what we know of as negative testimony. There is other evidence that there were lights on that truck, that the people actually saw lights. That is what we know as positive testimony. Of course, positive testimony has a much greater probative value than negative testimony. Perhaps I can illustrate it this way: You may stand alongside of a railroad track and a train may go by and it may whistle, the engineer may pull the whistle cord and the whistle sound; it may be that you are paying no particular attention to it, and afterward you might readily say that you didn't hear any whistle. Now, that is different from saying that a whistle was not blown. The one is negative testimony; the other is positive testimony. As I say, positive testimony has much greater probative value than negative testimony."

What the court, in effect, said or what the jury could well have understood the court to mean was that on that vitally important phase of the case the testimony was of two kinds, one, that the witnesses did not see any lights and the other that the witnesses did see lights, and that the former testimony is designated negative and the latter is designated positive with much the greater probative value to the latter. The necessary conclusion to that line of thought is that the testimony of those who said they saw lights on the trailer should be given much the greater weight. But the fact is that some of the proofs on behalf of the bus company went beyond the

merely negative statement that the witness did not see any lights. The witness Ogbourn testified: "There was absolutely no lights of any kind on the tractor-trailer unit. *Q.* Now, you are sure about that? *A.* Absolutely." The witness Oscar Wood testified on cross-examination by the truck-trailer group:

"*Q.* This big tractor and trailer, according to you, was out on the road eleven o'clock at night without any lights on it at all, is that right? *A.* That is right. *Q.* No doubt about that in your mind? *A.* No doubt about it."

There is nothing negative about that testimony. It, of course, carries a negative in that it says that there were no lights, but it is testimony, particularly as to Ogbourn, of one who investigated a fact and who swears positively from his knowledge. That testimony, as a type, has equal probative value with the type in which the witness says that he observed and saw lights. The weight to be given to the testimony of the several witnesses was for the triers of the fact to determine without being put under the control of a formula. *Mazanek* v. *Pennsylvania-Reading Seashore Lines,* 125 *N. J. L.* 394; *Reiman* v. *Essex Chair Co.,* 10 *N. J. Mis. R.* 518.

Finally, it is said that the court erred in refusing to charge the following request:

"A person turning across a line of traffic is under a duty to use great care and to seek an opportune time to do so. If you find from the evidence that the operator of the Zentz motor truck intended to make a right-hand turn and cross the path of oncoming traffic, you will ask yourselves whether he used great care and sought an opportune time in so doing, for if he did not use great care and did not seek an opportune time in so doing you may determine that he was guilty of negligence in the operation of his truck."

The request was based upon proofs already mentioned. The court recognized the appropriateness of a charge respecting the legal burden upon a driver who would cross a line of traffic and gave this direction to the jury:

"It is the law of this state that a person turning across a line of traffic is under a duty to use care commensurate under the circumstances existing in doing so and to seek an oppor-

tune time in which to do so. If you should find that the operator of the truck and trailer intended to make a right-hand turn and crossed the path of oncoming traffic you will naturally ask yourselves whether the operator used that care necessary under the circumstances and sought an opportune time in which to do so. If he did not use that care and did not seek an opportune time to do so, then, of course, if that was one of the proximate causes of this accident that defendant should respond in damages; if he did use the care that the circumstances required and sought an opportune time to do so, if he was going across traffic—of course that is denied by the defendant—then he should not respond in damages."

The court was not obliged to charge in the words of the request provided the substance thereof was correctly charged. The essentials of the rule as heretofore applied in our cases is that the driver in such circumstance shall use what is variously defined as "great care," "a high degree of care" or "a degree of care commensurate with the risk of the danger" and that the driver is burdened with the opportunity of seeking an opportune time. *Felix* v. *Adelman,* 113 *N. J. L.* 445; *Day* v. *Beyer,* 5 *N. J. Mis. R.* 1069; *Senofsky* v. *Frecker,* 10 *Id.* 505; *Chapman* v. *Burns,* 11 *Id.* 475; *Anderson* v. *Cassidy,* 119 *N. J. L.* 331. The court's charge as to opportune time was adequate. But the word "commensurate" is one of relative measurement and needs an object of comparison; its meaning is "of equal measure with" something —in this case the "hazard" or the "danger" or the "great risk" involved in the movement. Perhaps that idea was conveyed in the language used by the court. Our disposition of the case on other grounds makes a decision of this point unnecessary; greater clarity would have been better.

The judgment will be reversed, and a *venire de novo* awarded.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, CASE, BODINE, DONGES, PERSKIE, PORTER, COLIE, DEAR, WELLS, RAFFERTY, HAGUE, THOMPSON, JJ. 13.

*Concurring in result*—HEHER, J. 1.