SMALL *v.* WESTCHESTER FIRE INS. Co.

*(Circuit Court, D. Indiana. August 6, 1892.)*

No. 8,203.

1. FIRE INSURANCE—TITLE TO PROPERTY—CONDITIONS AGAINST LITIGATION.
A policy of insurance on personal property was conditioned to become void if the title or possession of the property should "be now, or hereafter become, involved in litigation," unless consent in writing was indorsed thereon by the company. The policy and the property were assigned to a bank, and the company gave its consent in writing to the transfer of the policy. A judgment creditors' bill was brought against the insured, and the bank was made party thereto, and was adjudged to hold the property in trust for the plaintiffs in the bill, but, becoming insolvent *pendente lite,* a receiver was appointed. The insured property was destroyed by fire after the suit, and before final decree. *Held* that, by consenting to the transfer of the policy, the company impliedly consented to the transfer of the property insured thereby; and that the creditors' suit did not involve either title or possession, within the meaning of the condition.

2. SAME—TRANSFER OF POLICY—RECEIVERSHIP.
When the fire occurred the company became liable to the bank, and the subsequently appointed receiver could recover on the policy, as, after the fire, it became a chose in action, and assignable without the company's consent.

3. SAME.
The decree appointing the receiver did not operate by relation so as to vest the title in him as of the date of the commencement of the suit, and before the fire, and hence could not be considered a violation of a condition against any change of title without the company's consent.

4. SAME—VALIDITY OF CONDITION—PUBLIC POLICY.
A condition in an insurance policy that it shall become void if the title or possession of the property is, or shall become, involved in litigation, is not against public policy, but is intended to protect the insurer from carrying insurance on property where the title or possession is so doubtful as to become involved in litigation; but such condition does not apply to litigation involving no question of title or possession adverse to that of the assured.

5. SAME—FOREIGN COMPANIES—PRESUMPTIONS.
In an action in a federal court on a fire policy issued within the state, and on property there situated, by a foreign insurance company, it will be presumed, nothing appearing to the contrary, that the company has complied with the statutes prescribing the conditions upon which foreign insurance companies may do business within the state; and the validity of conditions contained in the policy must therefore be determined by the state law.

6. SAME—CONDITIONS LIMITING TIME OF SUIT.
Where the statute of a state (Rev. St. Ind. § 3770) relating to foreign insurance companies provides that no condition in a fire policy shall be valid which prohibits the bringing of a suit thereon after the expiration of any period less than three years, a condition in a policy in violation thereof will be held void by the federal courts.

7. SAME.
An agreement in such case that, if suit shall be brought after the expiration of one year, the lapse of time shall be deemed conclusive evidence against the validity of the claim, is equally invalid, as it attempts to accomplish by indirection what is expressly forbidden by statute.

At Law. Action by Joseph C. Small, as receiver of the City National Bank of Lawrenceburgh, against the Westchester Fire Insurance Company on a policy of insurance. Heard on demurrer to certain paragraphs of the answer. Demurrer sustained.

*Harris & Calkins*, for plaintiff.

*Finch & Finch*, for defendant.

BAKER, District Judge. The complaint is upon a policy of fire insurance. On the 4th day of December, 1882, the defendant executed to Henry Fitch, of Lawrenceburgh, Ind., a policy for one year, which is copied in the complaint, insuring against loss or damage by fire, to the amount of $2,000, certain piles and stacks of lumber owned by Fitch, and situated in his yards at Lawrenceburgh. The policy was assigned on the 2d day of August, 1883, by Fitch to the City National Bank of Lawrenceburgh, to which the defendant gave its consent by written indorsement on the policy. On the 14th day of November, 1883, the lumber so insured, being of the value of $20,000, was destroyed by fire, and due proof of loss was made. The defendant answered in five paragraphs, consisting of a general denial and four special paragraphs. The plaintiff demurred to the 2d, 3d, and 5th paragraphs of answer.

1. The second paragraph of answer alleges, in substance, that it is provided by the policy in suit that "it shall be void if the title or possession" of the property insured "be now or hereafter become involved in litigation;" that after the issuance of said policy, and before the loss herein sued for, the title and possession of the property insured became involved in litigation, as stated; that during the year 1883, and after August 2d of that year, the First National Bank of Indianapolis, Ind., and many others, recovered judgment in the Dearborn circuit court in this district against Henry Fitch for large sums of money, and took out writs of execution, which on the —— day of September, 1883, came to the hands of the sheriff of said county; that thereupon said First National Bank and others filed a creditors' bill in said Dearborn circuit court against Henry Fitch and the City National Bank of Lawrenceburgh, showing that Fitch, at and about the 2d day of August, 1883, had transferred all of his property to the City National Bank fraudulently, without consideration, and with intent to cheat, hinder, and delay his creditors, of which intent the said bank had full notice and knowledge; that such proceedings were had that said City National Bank and said Fitch and the other defendants to said action appeared and filed answers putting said questions in issue, and the cause came on for trial at the next ensuing term of the Ripley circuit court, into which the cause had been removed, and the court found the facts in said bill to be true, and held that the property should be held by the bank in trust for the creditors of said Fitch.

The second paragraph is predicated on the exceptional clause in the policy, to wit:

"This policy shall become void unless consent in writing is indorsed by the company hereon in each of the following instances, viz.: (1) If * * * the title or possession be now, or hereafter become, involved in litigation."

The policy, and the property insured thereby, were transferred by Fitch to the bank on the 2d day of August, 1883, and the company gave its consent in writing to the transfer of the policy. The transfer of the policy was notice to the company of the transfer of the property. By its consent to the transfer of the policy, it impliedly consented to the transfer of the property. The transfer, though fraudulent as to creditors, was good as between Fitch and the bank. Fitch's creditors, having recovered judgments at law which they could not collect, filed a creditors' bill against him and the bank, which was sustained, and the bank was decreed to hold the property in trust for the creditors. The transfer of the property was not set aside as void, but the bank was adjudged to hold it in trust for the plaintiffs in the bill. And as, *pendente lite*, the bank had become insolvent, and had passed by order of the comptroller into the hands of a receiver, and had thus become incapable of acting as trustee, the plaintiff was appointed, by order of the court, receiver of the property. The fire occurred after the bringing of the bill, and before the final decree. The defendant, by virtue of its consent to the assignment of the policy, and its implied consent to the change of the possession of the property, cannot question its liability on account of the transfer of the property by Fitch to the bank. Hence, when the fire occurred, it became liable to the bank, and, if the bank could have recovered, the plaintiff, as receiver, can recover, as the policy, after the fire, became a chose in action, and assignable without the company's consent. The precise question, then, is, did the suit by the creditors, to have it decreed that the bank should hold the property in trust for them, render the policy void by virtue of the foregoing condition?

It is argued that the condition is void as against public policy. Properly construed, I do not think the provision in question can be held in contravention of public policy. Such a condition is a reasonable one to secure the insurance company against the danger incident to a doubtful and litigated title or possession. The manifest purpose of the condition is to protect the insurer from the risk of carrying insurance on the property when the title or possession of the assured is so doubtful as to be or become involved in litigation. Such being the object of the condition, the litigation must be such as to involve a claim of title or possession adverse to the title or possession of the assured. A condition thus guarding the insurer against the increased risk incident to a litigated title or possession cannot be said to violate any rule of sound public policy. The question still remains, how ought such a condition to be construed? Unquestionably, the condition must be strictly construed as against the insurer, so that effect may be given to the policy, if it can be done without a disregard of the plain letter of the contract. *Benignæ faciendæ sunt interpretationes propter simplicitatem laicorum ut res magis valeat quam pereat.* A condition "crouched unseen in the jungle of printed matter with which a modern policy is overgrown" is strictly construed, to avoid a forfeiture. *Van Schoick* v. *Insurance Co.*, 68 N. Y. 434. In *Insurance Co.* v. *Norton*, 96 U. S. 234, on page 242, it is said:

"Forfeitures are not favored in the law. They are often the means of great oppression and injustice."

In *Insurance Co.* v. *Vanhue*, 126 Ind. 410, 415, 26 N. E. Rep. 119, 121, it is said:

"Provisions intended to create a forfeiture, wherever found, are strictly construed, in order to avert a forfeiture; but such provisions are restricted, with especial care and strictness, in contracts of insurance, the courts, with an almost unanimous voice, deciding that such contracts, because of their peculiar character, shall be strictly and rigidly construed against the insurance company, wherever a strict construction is necessary to prevent the forfeiture of the policy."

Such a construction is manifestly just. The conditions embodied in modern policies are carefully prepared for the insurance companies by counsel learned in the law, and it is plainly right that every doubt should be resolved against those who have caused the doubt. *First Nat. Bank* v. *Hartford Fire Ins. Co.*, 95 U. S. 673; *Moulor* v. *Insurance Co.*, 111 U. S. 335, 4 Sup. Ct. Rep. 466.

These clauses, creating a forfeiture, are ordinarily construed to relate only to voluntary acts of the assured which fall plainly within their terms. Courts will not construe them as embracing acts of third parties, or proceedings *in invitum*, unless the language of the condition is so plain and explicit that no other construction can be adopted. It would prove a source of great injustice and oppression to hold that the acts of third parties, or proceedings *in invitum*, should defeat a policy, unless it was so nominated in the condition in plain and unambiguous terms. Hence it has been held that a condition against incumbrances is not broken by a tax lien created by operation of law. *Hosford* v. *Insurance Co.*, 127 U. S. 404, 8 Sup. Ct. Rep. 1202. In this case Mr. Justice GRAY said:

"I am instructed by the majority of the court to announce the opinion that the warranty concerning incumbrances includes only incumbrances created by the act or with the consent of the assured, and not those created by law."

So when the policy contained a condition exempting the company from liability, "If, without written consent hereon, the property shall hereafter become incumbered in any way," it was held to refer to a voluntary incumbrance, and not to a mechanic's lien. *Green* v. *Insurance Co.*, 82 N. Y. 517. On page 519 it is said "that the condition applied only to incumbrances created by or with the assent of the assured, and to the creation of which he might apply for the consent of the company, and that the true meaning of the condition was that the assured should not incumber the property without first obtaining the written consent of the company." The same condition received the same construction in the earlier case of *Baley* v. *Insurance Co.*, 80 N. Y. 21, where it was held not to embrace "incumbrances by judgment or otherwise, *in invitum*, created by operation of law." In this case it was said, if an involuntary lien avoided the policy, the imposition of a tax on the insured property would create a forfeiture of the insurance, and the result would be that each year when the tax became a lien the policy would become void, unless the company should consent to reinstate it by waiving the forfeiture. In *Insurance Co.* v. *Pickel*, 119 Ind. 155, 21 N. E. Rep. 546, the condition was: "If the property shall hereafter become mortgaged or

incumbered, * * * this policy shall be null and void." The court said that this condition had no reference to such liens as were created by law, but that it had reference to such liens only as the assured should voluntarily place upon the insured property. In *Keeney* v. *Insurance Co.*, 71 N. Y. 396, the policy contained the usual condition concerning change of title or possession; and it was held that the appointment of a receiver *pendente lite*, on a bill between copartners, who were the insured, was a change neither of title nor possession, although the receiver, who was a member of the firm, took actual possession of the property.

If the bringing of a suit involving the title or possession of the property against the assured *ipso facto* avoids the insurance, then every policy holder, when sued, loses, *eo instanti*, his insurance. The assured can no more prevent the institution of a suit involving the title or possession of the insured property than he can the accruing of a tax lien, a judgment or a mechanic's lien. The bringing of a suit is a proceeding *in invitum*. It is usually brought without consulting the defendant, and it would ordinarily be impossible to apply to the company for the consent necessary to save a forfeiture. It would seem that the condition in question ought to be construed as applying only to voluntary litigation involving the title or possession of the property insured.

Again, as has already been stated, the suit, to work a forfeiture, must be one directly involving a claim to the title or possession of the property adverse to the title or possession of the assured. The *lis pendens* of a creditors' bill is an equitable levy, and secures priority of lien to the complainants. *Tilford* v. *Burnham*, 7 Dana, 109; *Miller* v. *Sherry*, 2 Wall. 237; *Edgell* v. *Haywood*, 3 Atk. 357; *Corning* v. *White*, 2 Paige, 567. A suit by creditors' bill does not ordinarily or necessarily involve the title or possession of property any more than does the levy of an ordinary execution at law. The purpose of the suit was to secure and enforce an equitable levy and execution. Hence neither the title nor possession of Fitch or of the bank was involved in litigation, within the true construction of the condition. The suit was not one in which the issue directly involved either title or possession. If the title or possession were to be affected, the effect was consequential, and not the direct result of the litigation. The bill had the same object in view as an execution at law, to fasten a specific lien on the property, with the ulterior purpose of exposing it to sale. For these reasons this paragraph must be held bad.

2. The third paragraph of the answer alleges, in substance, that it is provided by said policy that—

"No suit or action against this company for the recovery of any claim by virtue of this policy shall be sustainable in any court of law or equity unless such suit or action shall be commenced within twelve months next after the fire shall have occurred. Should any suit be commenced against this company after the expiration of the aforesaid twelve months, the lapse of time shall be taken and deemed as conclusive evidence against the validity of such claim."

That the property insured, and for the loss of which this action is brought, was destroyed by fire on the 14th day of November, 1883, and

that this suit to recover therefor was not commenced until the 20th day of November, 1886. The policy of insurance was executed in this state, and insured against loss or damage by fire property situated therein. Although the defendant is a foreign insurance company, in the absence of anything to the contrary appearing, it will be presumed that it had complied with the laws of this state relating to foreign insurance companies, and prescribing the conditions on which they may carry on the business of insurance therein. The validity of the condition contained in the policy must therefore be determined by the law of this state. Section 3770 of the Revised Statutes of Indiana was in force at the time of the execution of the policy in suit. That section provides that—

"No such [foreign] insurance company shall insert any condition, in any policy hereafter issued, requiring the assured to give a notice forthwith, or within the period of time less than five days, of the loss of the insured property; nor shall any condition be inserted in any such policy requiring the insured to procure the certificate of the nearest justice of the peace, mayor, judge, clergyman, or other official or person, of such loss, or the amount of such loss; and any provision or condition contrary to the provisions of this section, or any condition in said policy, inserted to avoid the provisions of this section, shall be void; and no condition or agreement not to sue for a period of less than three years shall be valid."

The agreement to bring no suit or action on this policy, unless it should be brought within one year, is within the express language of the statute, and must be held invalid. *Insurance Co.* v. *Brim,* 111 Ind. 281, 12 N. E. Rep. 315; *Pickel* v. *Insurance Co.,* 119 Ind. 291, 21 N. E. Rep. 898; *State* v. *Insurance Co. of North America,* 115 Ind. 257, 17 N. E. Rep. 574.

The agreement that, should any suit be commenced against the company after the expiration of one year, the lapse of time shall be taken and deemed conclusive evidence against the validity of such claim, is equally invalid. It attempts to accomplish by indirection what is forbidden to be done directly. A court ought not to permit a salutary provision of the statute to be defeated by a mere artful evasion. This paragraph of answer is bad.

3. The fifth paragraph of the answer alleges in substance that it is provided in said policy that, if any change shall take place in the title or possession of the property, whether by sale, transfer, or conveyance, in whole or in part, or by legal process or judicial decree, then said policy shall be void; that before the loss herein sued for, during the year 1883, the following action was taken regarding the property insured by said policy, to wit, the First National Bank of Indianapolis, and many others, recovered judgments in the Dearborn circuit court against Henry Fitch for large sums of money, and took out writs of execution, which on the ——— day of September, 1883, came to the hands of the sheriff of said county; that thereupon the First National Bank of Indianapolis and others filed a creditors' bill in the Dearborn circuit court against Fitch and the City National Bank of Lawrenceburgh, showing that Fitch, at and about the 2d day of August, 1883, had transferred all of his

property to the City National Bank, fraudulently, without consideration, and with intent to cheat, hinder, and delay his creditors, of which intent the said bank had full notice and knowledge; that Fitch, the City National Bank, and the other defendants appeared to said suit and filed answers, putting said questions in issue; that a trial was had in the Ripley circuit court, to which the cause had been removed, and the court found the facts in said bill to be true, and adjudged that the property so transferred to said bank was held by it in trust for the benefit of the creditors of said Fitch, and appointed plaintiff receiver of the property of Fitch in the hands of said bank; that by said action and judgment the title and possession of said property were transferred and conveyed to the plaintiff, as of the date of ————, 1883, when said action to subject the property of Fitch to the payment of his debts was begun; that the defendant never consented to anything that occurred at said suit, and never consented to the transfer of said property to the plaintiff.

This paragraph of answer is bad. The institution and pendency of the suit by the creditors of Fitch against him and the City National Bank of Lawrenceburgh wrought no change in the title or possession of the property insured. This proposition seems too plain to require argument or authority. No receiver was appointed in that suit until after the loss by fire had occurred, and a right of action therefor had accrued. The answer is pleaded on the theory that the judgment thereafter rendered by which a receiver for the insured property was appointed and authorized to take possession operated by relation as an appointment and possession from the time the suit was brought. Provisions intended to create a forfeiture are strictly construed to avert a forfeiture. Such provisions are not favorites of the law. They are construed with special care and strictness against the insurance company, whenever a strict construction is necessary to avoid a forfeiture of the policy. Unless the act claimed to work a forfeiture is forbidden, either in express terms or by fair and necessary implication, no forfeiture is created. Here no forfeiture can be claimed, unless a retroactive force is given to the appointment and possession of the receiver, even if it be conceded that the appointment and possession of a receiver would work a change in title or possession. Whether the appointment and possession of a receiver would work a change in title or possession, it is not necessary now to decide. See *Keeney* v. *Insurance Co.*, 71 N. Y. 396; *Thompson* v. *Insurance Co.*, 136 U. S. 297, 10 Sup. Ct. Rep. 1019. The doctrine of relation is a fiction of law. It is that doctrine by which an act is made to produce the same effect as if it had occurred at an antecedent period. This principle will not be allowed operation where it would work an injury to third parties. *Fite* v. *Doe*, 1 Blackf. 127; *Jackson* v. *Bard*, 4 Johns. 230. It is never invoked except in furtherance of justice. See cases *supra; Jackson* v. *Bull*, 1 Johns. Cas. 81; *Jackson* v. *Raymond*, 1 Johns. Cas. 86; *Jackson* v. *McCall*, 3 Cow. 75; *Ashley* v. *Eberts*, 22 Ind. 55; *Lynch* v. *De Bernal*, 9 Wall. 315; *Gibson* v. *Chouteau*, 13 Wall. 92. In the case last cited the court says:

"The doctrine of relation is a fiction of law adopted by the courts solely for the purposes of justice, and is only applied for the security and protection of persons who stand in some privity with the party that instituted the proceedings."

See, also, *Heath* v. *Ross*, 12 Johns. 140.

The insurance company stands in no relation of privity with the parties who instituted the proceedings resulting in the appointment of a receiver. It is believed that no court has ever held that a forfeiture may be created by relation. Such an application of the doctrine would defeat, rather than further, the purposes of justice. The property had been destroyed, and a right of action for its loss had arisen, before the receiver was appointed. No rule of law and no principle of justice will permit the defendant to escape liability therefor on the grounds set forth in this paragraph of answer. The property having been destroyed, the appointment of the receiver as to it was ineffective. As to the property insured, no change of title or possession had occurred before the fire. None took place after the fire, unless the decree could change the title and possession of property which had already ceased to exist. That the decree could have no such effect seems too plain for serious debate.