100 N.J. Super. 464 (1968)
242 A.2d 635
ASA F. WARREN AND VERNA M. WARREN, PLAINTIFFS-APPELLANTS,
v.
THE EMPLOYERS' FIRE INSURANCE COMPANY, BOSTON, MASSACHUSETTS, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued April 8, 1968.
Decided April 25, 1968.
*466 Before Judges CONFORD, COLLESTER and LABRECQUE.
Mr. William J. Hughes argued the cause for appellants (Messrs. Loveland, Hughes & Garrett, attorneys).
*467 Mr. Manuel H. Greenberg argued the cause for respondent (Messrs. Arkus & Cooper, attorneys).
The opinion of the court was delivered by LABRECQUE, J.A.D.
Plaintiffs appeal from a judgment of involuntary dismissal of their suit to recover for losses allegedly compensable under a homeowner's insurance policy issued by defendant Employers' Fire Insurance Company, Boston, Massachusetts.
The policy in question covered "all risks" to plaintiffs' home located in Egg Harbor Township, Atlantic County, and certain specified perils including "sudden and accidental damage from smoke" to its contents. It was purchased through plaintiffs' friend and neighbor, one Murray, a New Jersey licensed insurance broker who also was authorized to act as defendant's agent in the Commonwealth of Pennsylvania (his agency was terminated in June 1966). The policy was in a standard form, N.J.S.A. 17:36-5.20, and contained a clause which provided:
"No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within twelve months next after inception of the loss."
On December 26, 1964, when plaintiffs returned to their home after an absence over Christmas, they found that considerable damage, in the form of staining, discoloration and scorching, had been done to the building and its contents by reason of malfunctioning (overheating) of their electric baseboard heating system. Between that time and some time in May 1965 (after which the units were replaced) the heating system allegedly misbehaved in a similar manner some five to seven times.
Plaintiffs testified that upon being notified of the December damage, Murray came to their home and, after inspecting *468 it, told them "not to worry, that we were covered for this in our policy and he would take care of it." Notice of the loss was thereafter given to defendant (by letter from Murray dated March 6, 1965) and the claim was assigned to one Costan, an employee of General Adjustment Bureau, for investigation on the company's behalf. He made an inspection and Mrs. Warren testified he said that the total damage to the interior and contents was $900 but told her there was no coverage. When the Warrens told Murray of this, he said he would "check" for them. He then telephoned Costan who, he said, called back in early February 1965 to tell him "that he thought he had this matter settled with the Warrens * * * and he said he was offering them $900 and that there was a question about the drapes which he would adjust at a later time." Costan denied making the offer and testified he was not assigned to the case until March 15, 1965. Plaintiffs also consulted one Maguire, another friend, who presumably had a familiarity with insurance matters.
Costan was subsequently transferred to another state and the handling of the claim was turned over to one Baldwin. Estimates of $173.65 for cleaning the walls and $189.60 for cleaning the contents were later obtained, whereupon Baldwin informed the Warrens on April 22, 1965 that he was offering $173.65 in full settlement of the claim for damage to the house but that the damage to the contents was not covered. In response to a later request from Mrs. Warren, Baldwin returned to the premises, but he again allegedly told them that the company would pay only the cleaning cost of $173.65. On August 30, 1965 Baldwin wrote Mrs. Warren, impliedly confirming that offer (plaintiffs contend it was received somewhat later).
In the meantime, Murray had been attempting to induce the company to make an offer satisfactory to plaintiffs but had been unsuccessful. Warren testified that some time in the "middle" of November 1965 (Murray thought it was around Thanksgiving) Murray reported his lack of success *469 and advised them to secure an attorney. At the end of two or three weeks they retained counsel who wrote the company under date of December 20, 1965 but received no reply. He wrote again on January 13, 1966, after which, at the attorney's request, there was a meeting at his office with Baldwin at which the latter renewed his offer of $173.65 for the damage to the house and again disclaimed liability for the damage to the contents, although indicating that he would discuss the matter again with the company. At no time during the efforts to obtain settlement was there any reference to the 12-month clause.
There was no change in the company's position and plaintiffs filed the present suit on May 24, 1966. Defendant's answer denied coverage for the loss to the contents and pleaded the failure to sue within the 12-month period as a defense to the entire claim. Plaintiffs set up waiver and estoppel as a bar to invocation of the 12-month limitation.
At the conclusion of the taking of testimony, defendant's motion for involuntary dismissal was granted on the ground that the action was barred by plaintiffs' failure to institute suit within the 12-month period and that defendant had not waived, and was not estopped, by the conduct of its agents from asserting its right to invoke the limitation.
In substance, plaintiffs seek reversal of the judgment on the following grounds: (1) defendant waived its right to rely upon the 12-month suit limitation contained in the policy; (2) the proofs on the issue of estoppel required submission of that issue to the jury; (3) since the single loss claimed resulted from a series of incidents which took place between late December 1964 and May 1965, the institution of suit on May 24, 1966 was a sufficient compliance with the policy. We find none of them to be meritorious.
An insurer may waive the provisions of its policy or be estopped by its conduct from asserting defenses which would otherwise be available to it. 16A Appleman, Insurance Law and Practice, § 9081, p. 287 (1968). Such a waiver has been defined as the voluntary, intentional relinquishment of *470 a known right. Ibid., at p. 279. Here, in the absence of proof from which it could be inferred that such a waiver took place before expiration of the 12-month period (December 26, 1965), plaintiffs rely upon Baldwin's conference with their attorney in late January or early February 1966 concerning the claim, and his representation that he would take the matter up again with the carrier. However, proof to support the intent necessary to constitute a waiver is entirely lacking. Ibid., §§ 9081, 9084, pp. 288, 300. The law favors settlements. Rynar v. Lincoln Transit Co., Inc., 129 N.J.L. 525, 528-29 (E. & A. 1943). Plaintiffs were represented by counsel who had requested a conference. The damage claimed was alleged to have resulted from a series of occurrences, the last in May 1965. Defendant could negotiate to "buy its peace" without waiving its rights. Further, no additional offer was made at the time or thereafter, and the disclaimer of liability for the damage to the contents of the house was reiterated. Baldwin's promise to submit the matter once more to the company cannot support an inference that the company was thereby intentionally relinquishing its right to take advantage of plaintiffs' failure to timely sue for the damage which was then more than a year old. Cf. Central Radiator Co. v. Niagara &c Co., 109 N.J.L. 48, 51-52 (E. & A. 1932); compare Bruni v. Prudential Ins. Co., 51 N.J. 408 (1968), reversing on dissenting opinion in Appellate Division 100 N.J. Super. 154 (App. Div. 1967); Martin v. State Ins. Co., 44 N.J.L. 485, 487 (Sup. Ct. 1882).
Nor did the facts adduced make out a case for the jury as to estoppel. Considering the testimony in the light most favorable to plaintiffs and drawing from it the inferences most favorable to them, the most that could be said was that although the company as far back as April 1965 had consistently adhered to its intention to deny the claim for damage to the contents and to pay no more than $173.65 for the damage to the building, Murray had been endeavoring to secure a better offer for them. As noted, Warren testified that in the middle of November 1965 Murray finally told *471 him "they [defendant] weren't going to do any more for us and * * * to get an attorney."
Assuming, arguendo, that Murray had been acting as the company's representative in inducing plaintiffs to delay obtaining an attorney while he endeavored to induce the company to make a settlement satisfactory to them, there was still a reasonable period (at least a month) remaining during which timely suit could have been instituted. In such a case estoppel is no defense. Jersey Discount Co. v. Aetna Insurance Co., 128 N.J.L. 293, 294-295 (Sup. Ct. 1942); Ettman v. Continental Insurance Co., 116 N.J.L. 399, 401-402 (E. & A. 1936); Sherwood Jewelers-Newark, Inc. v. Philadelphia National Insurance Co., 102 F. Supp. 103 (D.N.J. 1952); Smith v. Commercial Travellers Mut. Acc. Ass'n, 158 F.2d 65, 67-68 (7 Cir. 1946), certiorari denied 331 U.S. 860, 67 S.Ct. 1751, 91 L.Ed. 1867 (1947); Annotation, 29 A.L.R.2d 636, 650 et seq. (1953). There is no proof of anything said or done on defendant's behalf between the middle of November and December 26, 1965 which could reasonably have induced plaintiffs to defer suit beyond the latter date. The delay was entirely of plaintiffs' own making. It follows that defendant was not estopped from setting up the 12 month limitation.
Higgins v. Fidelity-Phoenix Fire Insurance Co., 107 N.J.L. 175 (E. & A. 1930), and Fredericks v. Farmers Rel. Ins. Co. of New Jersey, 80 N.J. Super. 599 (App. Div. 1963), on which plaintiffs rely, are inapposite. In Higgins plaintiffs were lulled into security throughout the entire limitation period, while in Fredericks the estoppel was based on the wrongful withholding from the insured by the insurer of a copy of the policy, whereby the latter was not alerted to the policy provision limiting the time for the institution of suit.
Plaintiffs cite no case to support their final contention that, since the damage for which they sued was the result of a number of occurrences the last of which took place subsequent to the date suit was filed, they were not out *472 of time. The case was tried on the assumption that the occurrence which resulted in most of the damage took place on either December 25 or 26, 1964. The clause in the policy was unambiguous and required that suit for that loss be instituted within 12 months thereafter. The fact that subsequent failures of the heating system (the dates of which are not stated) increased the damage or caused additional damage did not extend the time for filing suit for the original loss. Sager Glove Corp. v. Aetna Insurance Co., 317 F.2d 439 (7 Cir. 1963), certiorari denied 375 U.S. 921, 84 S.Ct. 266, 11 L.Ed.2d 165 (1963). The only losses for which defendant continued liable were those which occurred within 12 months prior to May 24, 1966. Id., at p. 442. The burden of proving the date and amount of any loss sustained during that period was upon plaintiffs. Id., at pp. 442-443. There was no proof from which the jury could have admeasured any identifiable part of the claimed loss as having been sustained during the 12 months which preceded the suit and at the oral argument it was conceded that the damages could not be segregated.
We find it unnecessary to consider the remaining reasons urged in support of the judgment.
The judgment of the Law Division is accordingly affirmed.