### John S. NORTON

v.

### HOME INSURANCE COMPANY.

Supreme Judicial Court of Maine.

June 6, 1974.

---

Paul K. Stewart, John A. Graustein, Portland, for plaintiff.

Clyde L. Wheeler, P. A., Waterville, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

POMEROY, Justice.

Defendant's appeal from a judgment awarding damages to the plaintiff brings before us again the knotty issue of the effectiveness of a time limitation clause within which suit must be brought on an insurance policy. Hubert v. National Casualty Company, 154 Me. 94, 144 A.2d 119 (1958); Dolbier v. Agricultural Ins. Co., 67 Me. 180 (1877).

We deny the appeal.

The parties have stipulated the factual framework in which the problem arises.

Plaintiff, a Maine resident, purchased and received an insurance policy issued by the defendant on October 28, 1968.

The defendant is a New York corporation authorized to do business in the State of Maine.

The policy covered, among other things, loss and damage to unscheduled personal property in plaintiff's home, including

" . . . direct loss caused by sudden and accidental tearing asunder, cracking, burning, or bulging of a steam or hot water system . . . . "

By its terms the policy was to expire on October 28, 1971.

On or about April 26, 1969, the spigot on an oil tank in plaintiff's basement ruptured, causing considerable damage.

He seasonably reported the loss.

An agent for defendant insurer, after inspecting the damage, advised plaintiff that his policy did not provide coverage for the loss.

This denial of coverage occurred in May, 1969.

Nearly two years later, on March 9, 1971, plaintiff initiated this action.

In its answer to plaintiff's complaint, defendant pleaded the 12-month limitation of

action clause in plaintiff's policy as a bar to the action.[1]

This limitation is identical to that found in 24 M.R.S.A. 1402, which provided for a standard policy clause [2] reading:

"No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within twelve months next after inception of the loss."

Effective January 1, 1970, the 12-month limitation period in Sec. 1402 was extended to two years by operation of 24-A M.R.S.A. 3002,[3] enacted as part of the Maine Insurance Code.[4]

In denying defendant's motion to dismiss, the presiding Justice below stated that

"(a.) . . . the Court cannot say as a matter of law that a particular 'rupture on or about an oil tank at premises' is not within the definition of a steam or hot water system.

"(b.) . . . the amendment of January 1, 1970, extending the period of limitation from one to two years automatically altered the statutory policy thus

giving the two-year benefit to the policy holder."

Sitting as a fact-finder on the complaint itself, the Court found that the damage claimed was caused by the ruptured tank, which presented a "damaged heating system" subsumable under the policy, and entered judgment accordingly.

While neither of the statutes of limitation to which we allude above was mentioned in the judgment, it is abundantly clear that the Court applied the two-year period embodied in the later enactment, Sec. 3002.

The sole question now presented is whether plaintiff's action is barred by the 12-month limitation which appeared in his policy and which was consistent with 24 M.R.S.A. 1402.

The parties have devoted the major portion of the briefs to the question whether the 1969 enactment of 24-A M.R.S.A. 3002, which amended 24 M.R.S.A. 1402, should be given prospective or retrospective effect.

We consider the case must be decided on the basis of the effect of another section of the statute.

24 M.R.S.A. 2, the applicable statute at the time this cause of action arose,[5] de-

---

1. Also in its answer, defendant denied that plaintiff's policy covered the damage caused by the burst oil tank. On this appeal, however, according to the stipulation, defendant " . . . no longer contends that the loss was not covered by the period named in the policy, and . . . no longer contests the amount of damages."

2. That the Legislature may prescribe, consistent with the Maine and United States Consitutions, standard forms for insurance contracts, has been long settled in this State and elsewhere. Opinion of the Justices, 97 Me. 590, 55 A. 828 (1903). See also Continental Life Ins. Co. v. Hattabaugh, 21 Idaho 285, 121 P. 81 (1912), Foster v. Washington N. Ins. Co., 118 N.J.L. 228, 192 A. 59 (1937), New York Life Ins. Co. v. Boling, 177 Miss. 172, 169 So. 882 (1936).

3. "Standard fire policy required; exceptions. No insurer shall issue fire insurance policies

on property in this State, other than those of the Maine standard fire insurance policy, which shall contain the following consideration and insuring clause, assignment clause and the general conditions and stipulations set forth after such consideration, insuring and, assignment clauses:

   *Suit.* No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within two years next after inception of the loss."

4. P.L.1969, c. 132, Sec. 1.

5. The current definition of a foreign insurer is contained in 24-A M.R.S.A. 6 (P.L.1969, c. 132, sec. 1):
   "2. *Foreign Insurer.* A 'foreign' insurer is one formed under the laws of any jurisdiction other than this State."

fined the distinction between domestic and foreign insurers as follows:

"The word *'domestic,'* when used in this Title, means companies incorporated by this State; and the word *'foreign'* means companies, not so incorporated."

Defendant obviously falls within this definition of a foreign insurer.

24 M.R.S.A. 536, which was repealed and reenacted in substantially the same form in 24–A M.R.S.A. 2433 pursuant to adoption of the new Insurance Code, provided:

"No conditions, stipulations or agreements shall deprive the courts of this State of jurisdiction of actions against foreign insurance companies or associations, nor limit the time for commencing actions against such companies or associations to a period of less than 2 years from the time when the cause of action accrues." [6]

■ We find that this statute effectively bars defendant from asserting a 1-year statute of limitations on claims arising out of plaintiff's insurance policy. This is so, albeit the policy purportedly agreed upon between the parties provided such a 1-year limitation and such limitation was consistent with 24 M.R.S.A. 1402.

In Dolbier v. Agricultural Ins. Co.,[7] supra, the only occasion upon which this Court has addressed the application of the provision now embodied in Sec. 2433, an insurance policy clause stipulating a 12-month limitation on actions, was expressly found to be invalid under then R.S.1871, c. 49, Sec. 62.[8]

We find the force of the *Dolbier* reasoning undiminished by time or by subsequent repeated modifications of various statutes regulating domestic and foreign insurance companies doing business in Maine.

It was said in *Dolbier*:

"With this law before us we cannot say that the stipulation in the policy limiting the time for the commencement of an action to twelve months after the occurrence of the loss is binding on the assured.

"The cases cited in defense, where, in the absence of such a statutory inhibition as that above quoted, stipulations for a special limitation of suits have been held valid and binding between the parties, are inapplicable. The statute is just as effective against the validity of the stipulation as though its insertion in a policy of insurance was prohibited under a penalty . . . . The defendants cannot defeat (the action) by the interposition of a stipulation which has no legal efficacy." 67 Me. 180, 183.

This result is also compelled in the instant case, despite conformance of the policy in question to the Maine Standard Policy, as noted above.

■ While there is apparent conflict between the 12-month limitation in then Sec. 1402 and the 2-year limitation specified for foreign insurers in then Sec. 536, we conclude that the Legislature by its original enactment and successive reenactment of the 2-year limitation, intended that foreign insurance companies be controlled by a strict statutory limitation distinct from that contained in the "standard form," regardless of the nature of the insurance protection issued.

■ It is no violation of equal protection for the Legislature to so distinguish between foreign and domestic insurence companies. Metropolitan Casualty Ins. Co. v. Brownell, 294 U.S. 580, 55 S.Ct. 538, 79 L.Ed. 1070 (1935), reh. den. 295 U.S. 767, 55 S.Ct. 647, 79 L.Ed. 1708 (1935).

6. This provision was originally enacted with virtually identical wording by c. 34, Sec. 1, *Acts & Resolves* 1861.

7. A foreign insurance company.

8. Relief denied on other grounds.

The Court in *Brownell* specifically considered and upheld an Indiana statute invalidating, in policies issued by foreign insurers only, any "condition or agreement not to sue for a period of less than three years . . . ." *Id.* 294 U.S. 580, 582, 55 S.Ct. at 539. Absent any indications of the *raison d'etre* for the imposition of a longer limitation period upon foreign insurers, the Court relied upon the principle that

" . . . courts may not declare a legislative discrimination invalid unless, viewed in the light of facts made known or generally assumed, it is of such a character as to preclude the assumption that the classification rests upon some rational basis within the knowledge and experience of the legislators." (Footnote omitted) 294 U.S. 580, 584, 55 S.Ct. 538, 540, 79 L.Ed. 1070, 1073.

Here, as in *Brownell*, it cannot be assumed that the legislative classification lacks special justification or is unrelated to the subject with respect to which the classification is made.[9]

"There is no showing that the situation of foreign corporations, writing casualty insurance contracts in Indiana, is so similar to that of domestic corporations as to preclude any rational distinction between them as regards the time required for negotiating settlements of claims and the determination whether suits upon them should be prosecuted within or without the state. Where the record is silent, we cannot presume to declare that there is such similarity, or to say that a state is prohibited from making any distinction in the length of time within which suit must be brought. It is not beyond the range of probability that foreign casualty companies, as distinguished from domestic companies, generally keep their funds and maintain their business offices, and their agencies for the settlement of claims, outside the

state. For aught that appears such is the actual situation." 294 U.S. at 585, 55 S.Ct. at 541.

■ The insertion in plaintiff's policy of the 12-month limitation apparently required by then Sec. 1402 does not, as would first appear, present a flat contradiction between two statutes, *viz.*, Sec. 1402, as against Sec. 536, which imposes the minimum two-year limitation period on foreign insurers. This is so because once embodied in the policy bargained for by the parties here, the provisions set out in the "model" policy of Sec. 1402 became contractual, rather than statutory, in nature.

This principle was first enunciated by this Court in Dunton v. Westchester Fire Ins. Co., 104 Me. 372, 378, 71 A. 1037, 1039 (1908), wherein it was said with reference to a predecessor "form" policy of Sec. 1402:

" . . . the Maine Standard [fire insurance] policy, though its form is prescribed by statute, is not to be treated as a legislative enactment after it has been accepted by the parties, but as a voluntary contract, which, like any other contract, derives its force and efficacy from the consent of the parties."

See also Warren v. Employers' Fire Ins. Co., Boston, Mass., 53 N.J. 308, 250 A.2d 578 (1969), reversing 100 N.J.Super. 464, 242 A.2d 635 (App.Div.1968).

■ As we have already noted, to the extent that the contractual 12-month limitation violates the explicit statutory ban on such a limitation in Sec. 536, the former must give way. Dolbier v. Agricultural Ins. Co., supra; Small v. Westchester Fire Ins. Co., 51 F. 789 (1892); Insurance Co. of N. Am. v. Brim, 111 Ind. 281, 12 N.E. 315 (1887); Karnes v. American Fire Ins.

---

9. We are not unaware of the provisions of 14 M.R.S.A. 867. We are of the opinion, however, that this section has no application to insurance corporations for which special provision is made in 24 M.R.S.A. 536, now 24–A M.R.S.A. 2433.

Co. of Philadelphia, 144 Mo. 413, 46 S.W. 166 (1898).[10]

The dominance of the minimum two-year limitation imposed by Sec. 536 is made all the more clear by the fact that the parties here stipulated the same by virtue of the comprehensive "Conformity with Statute" clause in the "General Conditions" of the policy in question. That clause provides:

"The terms of this policy and forms attached hereto which are in conflict with the statutes of the state wherein this policy is issued are hereby amended to conform to such statutes."

■ We may say, then, that *by agreement*, rather than merely by mandate of the statute, the 12-month policy limitation was automatically "amended" to comply with Sec. 536.

Since plaintiff's action was seasonably commenced, and the issues of liability and damages are not contested, defendant cannot prevail.

The entry must be,

Appeal denied.

All Justices concurring.

10. Insofar as there is apparent contradiction between the two-year limitation (Sec. 536) and the 12-month limitation (Sec. 1402), thereby requiring reconciliation according to the rules of statutory construction, we must still conclude that the two-year limitation prevails as to defendant here. The standard form policy of Sec. 1402 was designed to govern fire insurance contracts written by all insurers, while the two-year limitation in Sec. 536 was addressed to the specific class comprised of foreign insurers only. We apply the rule that "(W)hen a statute makes special provision for one class, a general provision that might be applicable to that class will not be deemed to include it, but it will be assumed to be the legislative intent that the specific provision shall be applied to the class to which it refers and the general provision to all other classes for which specific provision has not been made . . . . " Button v. Slater, 198 Misc. 1, 99 N.Y.S.2d 355, 358 (1950), and determine that defendant, as a foreign insurer, falls within the restriction intended by Sec. 536. See also Town of Highland Park v. Marshall, Texas Civ.App., 235 S.W.2d 658 (1950); Estate of Dexter, 75 Misc.2d 239, 347 N.Y.S.2d 93 (1973).