650 A.2d 1051

MARGIE L. PETERS AND CARL PETERS, PLAINTIFFS,
v. MARRIOTT CORPORATION, DEFENDANT.

Superior Court of New Jersey
Law Division Mercer County

Decided May 12, 1994.

330

*Eric J. Ludwig* for plaintiffs (*Stark & Stark*, attorneys).

*Robert L. Grundlock, Jr.* for defendant (*Spector, Gadon & Rosen*, attorneys).

LENOX, A.J.S.C.

This interesting motion arises from the unanticipated consequence of a well-intentioned award entered by two arbitrators following a hearing under the Mercer County Non–Binding Personal Injury Arbitration Program. *R.* 4:21A–1 *et seq.* The arbitrators found in favor of defendant, plaintiffs did not file a rejection of the award and demand for trial *de novo* within 30 days, *R.* 4:21A–6(b)(1), and defendant now seeks to confirm the award. The effort of the arbitrators to render a decision which would bring about a settlement of plaintiffs' claims is now the basis for a challenge by plaintiffs to the award's validity.

On this contested motion by defendant for confirmation, *R.* 4:21A–6(b)(3), a plenary hearing was conducted to resolve conflicting versions by the attorneys for the parties as to what transpired at the arbitration hearing. The Supreme Court addressed the necessity for conducting an evidential hearing under such circumstances in *Nolan v. Lee Ho,* 120 *N.J.* 465, 479, 577 *A.*2d 143 (1990), involving contested facts with respect to the setting aside of a settlement agreement. The arbitrators and the attorneys for the parties testified and documentary evidence was offered. This opinion denies defendant's motion and grants plaintiffs a trial *de novo.*

Plaintiffs, husband and wife, have asserted personal injury and *per quod* claims arising from a fall by the wife on defendant's premises during the course of her employment. The claim of the female plaintiff for personal injuries was a questionable one. At the arbitration hearing, liability was vigorously contested both factually and legally. The damage claim was equally disputed, as plaintiff had an extensive past medical history, including a prior workers' compensation claim involving injuries similar to those allegedly sustained in the subject accident. Plaintiff was also paid workers' compensation benefits by her employer's insurance carrier in this case, and defendant contended that most of the expenses paid by the carrier were attributable to injuries and conditions which pre-existed her fall on defendant's premises. Thus, the

high amount of the carrier's lien on the proceeds of any settlement or award in plaintiff's favor was recognized by counsel for both parties and the arbitrators as an impediment to a resolution of the case.

The events at the arbitration hearing which gave rise to this contested motion were unusual. The hearing began with the testimony of the female plaintiff. During cross-examination by defendant's counsel, one of the arbitrators terminated the questioning. Plaintiff left the room and a discussion followed between the arbitrators and the attorneys for the parties. At that time, defendant had produced its only evidence in the form of documents which had been reviewed by the arbitrators. However, the hearing was never reconvened to complete cross-examination and re-direct examination of plaintiff or for the presentation of any other evidence in plaintiffs' case. No opportunity for summations was provided, and when award was entered, plaintiffs did not return to the room to hear the decision and reasons of the arbitrators. The award determined that plaintiff was 100% responsible for the happening of the accident.

The attorneys for the parties apparently did not leave the hearing with the same understanding as to what had occurred. The testimony, however, leaves no doubt as to what actually transpired. It is beyond question that all parties recognized that the workers' compensation lien was so large that, whether the case was concluded by settlement, arbitration award or even a subsequent jury verdict, it was unlikely that there would be any recovery sufficient to satisfy the entire lien, much less provide plaintiffs with compensation. It is equally true that, regardless of how the award was entered, there was no specific waiver by defendant of the 30 day time limit for filing a demand for a trial *de novo*. The dispute which has brought the parties to court has focused upon what occurred during the conference between the attorneys and the arbitrators, as well as the intent and legal effect of the award which was entered. It arises in the context of a motion to confirm the award because, for reasons which plaintiffs

assert constitute good cause, a timely demand for trial *de novo* was not filed.

Defendant's position is straightforward; that is, that the arbitrators entered a valid and enforceable award following a full and fair hearing. Plaintiffs oppose the motion to confirm contending that the parties and arbitrators did not intend the award to result in a dismissal of their complaint, but rather that it was entered in the hope that it would assist in effecting a justifiable compromise of the compensation lien, thereby facilitating settlement discussions which were to occur later. Thus, plaintiffs contend that there was no intention that they be bound by the 30 day limitation for rejection of the award, and that there is good cause for granting a trial *de novo*.

The arbitrators expressed no doubt in their testimony that the award they entered was generated in whole, or at least in part, by the understanding that it would be used as a tool to effect a settlement. They saw that plaintiffs' claims were questionable. One testified that he favored an award dismissing plaintiffs' case; whereas, the other described the case as "hotly contested" and believed that the decision was a "close call." He also said that had he decided in favor of plaintiffs, it would have been "a substantial verdict." During the discussion between the attorneys and arbitrators, they agreed that the case had a settlement value and that, if the arbitrators entered an award on the merits, it would accomplish nothing by way of a disposition of the case. They knew that defendant would demand a trial *de novo* in the event of a substantial monetary award, that plaintiffs would file a similar demand if they lost, and that in any event, any reasonable award on behalf of the plaintiffs would not satisfy the entire workers' compensation lien. The testimony of one of the arbitrators summed up their intent. He said that he perceived his role to be to get the case resolved, that the award was an attempt to do so by settlement, that he thought the case would be settled after the entry of the award, and that he did not think about what would occur if it did not settle. Accordingly, the award was entered

without any deliberations by the arbitrators as to who should prevail and what their award should be.

The validity of the award is not of the essence of the issue before the court. However, the reasonable belief of plaintiffs' attorney following the hearing is very material. Whether or not a fair trial was conducted and a valid award was entered, if plaintiffs' counsel reasonably believed there had been no full trial as such, and that the arbitrators and his adversary did not intend that an enforceable award be entered, that would support a finding under *R.* 4:50-1 justifying an order vacating the award. The focus here must be upon plaintiffs and their attorney, and the reasonableness of their belief that it was unnecessary to file a timely demand for a trial *de novo* under the circumstances.

The testimony of the arbitrators establishes that the primary motivation for the award was to provide a vehicle with which plaintiffs' attorney could obtain a compromise of the compensation lien in order to bring about a settlement of plaintiffs' claims against defendant. Whether defendant's attorney so understood is beside the point. It is clear that plaintiffs' attorney was himself justified in coming to that conclusion. It is inconceivable that in the absence of such an understanding on his part, he would have permitted the hearing to be discontinued during the course of his client's testimony with no opportunity to rehabilitate her, produce other evidence and make closing remarks to the arbitrators. He understood that defendant's attorney would obtain settlement authorization and then contact him. He further assumed from all of this that he would not be required to file a demand for trial *de novo* during the ongoing efforts of counsel to settle the case.

The arbitrators were attempting to effect a resolution of this case acceptable to both parties. From the standpoint of their objective, their efforts are commendable. The law favors settlements. *Warren v. Employers' Fire Ins. Co.,* 100 *N.J.Super.* 464, 470, 242 *A.*2d 635 (App.Div.1968), *rev'd on other grounds,* 53 *N.J.* 308, 250 *A.*2d 578 (1969). It has been held that settlements have a very high priority in the judicial system. *Clarke v. Brown,* 101

N.J.Super. 404, 415, 244 A.2d 514 (Law.Div.1968); *Jannarone v. W.T. Co.,* 65 *N.J.Super.* 472, 476, 168 A.2d 72 (App.Div.1961). As the Appellate Division stated in *Dodd v. Copeland,* 99 *N.J.Super.* 481, 485, 240 A.2d 444 (App.Div.1968), *aff'd,* 52 *N.J.* 537, 247 A.2d 129 (1968):

> The general policy of the law is to encourage the good-faith settlement of claims and thereby avoid or terminate litigation.

A fine line exists between legitimate efforts to dispose of a case through agreement of the parties and efforts which constitute a denial of due process of law. The courts and their officers must be ever vigilant, in their conduct designed to encourage settlement, not to trespass upon the rights of the parties. The mandatory non-binding arbitration statutes, *N.J.S.A.* 39:6A–24 *et seq.,* and *N.J.S.A.* 2A:23A–20 *et seq.,* and the rules adopted by the Supreme Court of New Jersey in supplement thereof, *R.* 4:21A–1 *et seq.,* were adopted to encourage settlement. Indeed, *N.J.S.A.* 39:6A–24 states that:

> The purpose and intent of this act is to establish an informal system of settling tort claims arising out of automobile accidents in an expeditious and least costly manner, and to ease the burden and congestion of the State's courts.

This statewide policy is encouraged by assignment judges, civil presiding judges and administrative personnel in their informal meetings with arbitrators. This is as it should be. Awards of arbitrators which are too high or too low in their amounts do little to effect settlements, and often inappropriately cause cases to be tried which would otherwise be amicably resolved. The goal of the arbitrators is to render an award which will be found satisfactory to all parties. With this in mind, no criticism can be directed at the good-faith actions of the arbitrators in this case. However, as stated in the *Compilation of Policies and Procedures for the New Jersey Statutory Arbitrations Programs,* published by the Administrative Office of the Courts:

> [A]rbitration is not merely another form of early settlement or bar paneling program. Arbitrators should be quasi-judicial in appearance, conduct and result. It should be a recognizable proceeding, in which attorneys participate, but more importantly one that the public can understand and in which it too can participate. The prevailing perception in the eyes of the attorney adversaries, the parties, and

the insurance carriers must be that arbitration is a legitimate and fair proceeding. The perception is paramount and must predominate.

Here, the actions of the arbitrators in discussing a methodology for disposing of the case were not inappropriate. The *Compilation of Policies and Procedures, supra,* advises arbitrators that "[s]ettlement negotiations are encouraged among the parties before, and, if necessary, during the hearing. The arbitrator may participate in settlement negotiations provided the parties are desirous and the arbitrator is willing." Such participation, however, must not be carried over into the award. While it is the hope of the arbitration program that the arbitrators will render an award which will be found acceptable to the parties, they may not enter such an award unless it also represents their conscientious and considered judgment on the merits. As the *Compilation of Policies and Procedures, supra,* notes:

The arbitration award should be based on the knowledge, expertise and integrity of the arbitrator. It should reflect the experience and legal culture of the county of venue. *Thus, an award which is designed to bring about a settlement but which does not represent the conscientious decision of the arbitrator should not be entered.*

[ (Emphasis supplied.) ]

At the plenary hearing, counsel focused primarily upon what they perceived to be the primary issue; that is, the validity of the award. Whether the award is void as plaintiffs contend is of only marginal relevance. Plaintiffs have no obligation, in opposing defendant's motion, to prove that the award was void or unenforceable. Nor do they need to prove that the 30 day time limitation of *R.* 4:21A–6(b)(1) was not applicable. Plaintiffs' efforts to establish a void award and the inapplicability of the 30 day time limitation were unnecessary. See *Mazakas v. Wray,* 205 *N.J.Super.* 367, 500 *A.*2d 1085 (App.Div.1985), where a trial *de novo* was granted more than 30 days following the entry of a valid award.

This arbitration award was entered in a non-binding arbitration program, wherein the award may be rejected without reason. This must be distinguished from a binding arbitration

award entered pursuant to statutory or contractual authorization, where the right to confirm, vacate or modify an award is governed by *N.J.S.A.* 2A:24-7 to -9. In such arbitrations (for instance, those involving claims under personal injury protection, uninsured motorists and under-insured motorists coverages), only issues regarding corruption, fraud, undue means, partiality, arbitrator misconduct, and validity of the award may arise. Under non-binding arbitration, whether a party deems an award to be valid or void, high or low, right or wrong, is immaterial, for the award may be vacated by a timely rejection of the award for good reason, or no reason at all. That right is absolute and unqualified. "The decision and award of the arbitrator [is not] subject to appeal." *R.* 4:21A-6(a). Contrary to the procedure under binding arbitration, involving an order to show cause pursuant to *R.* 4:67 to vacate an award premised upon a ground authorized by *N.J.S.A.* 2A:24-8, a losing party may simply reject the award and demand a trial *de novo* under the mandatory non-binding programs. *R.* 4:21A-6(b)(1) provides that the case shall be returned to the trial calendar for disposition when:

[W]ithin 30 days after filing of the arbitration award, a party thereto files with the Civil Case Manager and serves on all other parties a notice of rejection of the award and demand for a trial *de novo* and pays a trial *de novo* fee. . . .

This difference between non-binding arbitration in certain automobile and personal injury negligence cases and statutory binding arbitration in other cases is significant. In the former, the parties have an unconditional right to vacate an award subject to only a time limitation and the payment of a small fee. In the latter, however, an award may be vacated only for one of the specifically designated statutory reasons. In non-binding arbitration, an award may be set aside beyond the 30 day limitation period for good cause. To the contrary, binding arbitration awards may not be set aside beyond the 90 day time limitation, even if good cause exists.

Because of plaintiffs' fundamental right to reject the award without reason, by the filing of a timely demand for a trial *de novo*, the issue on this motion is simply whether plaintiffs have

shown sufficient cause for the granting of a trial *de novo* beyond the 30 day limitation. Authorization for the extending of the 30 day period on a showing of good cause has been judicially established. *Mazakas v. Wray, supra; Gerzsenyi v. Richardson*, 211 *N.J.Super.* 213, 511 *A.2d* 699 (App.Div.1986); *DeRosa v. Donohue*, 212 *N.J.Super.* 698, 515 *A.2d* 1309 (Law.Div.1986). The standard applicable to the resolution of such applications is that found in *R.* 4:50:

> Generally, when asked after the passage of 30 days to bypass the binding effect of this statutory arbitration, the trial courts should be guided by the same principles as they would apply in passing upon a motion for relief from an order or a judgment under *R.* 4:50-1.
>
> [*Mazakas, supra,* 205 *N.J.Super.* at 372, 500 *A.2d* 1085.]

*R.* 4:50-1 provides the grounds for granting a motion for relief from a judgment or order. Among those grounds is "excusable neglect." This is the reason most commonly asserted by a moving party seeking leave to file a demand for trial *de novo* out of time. However, the rule also provides a general provision to accommodate special cases by the inclusion of "any other reason justifying relief from the operation of the judgment or order." This is appropriate because "in many situations exact categorization is very difficult and, in the main, should be avoided except where the category is obvious or where exact choice is necessary to decision." *See* 7 *Moore, Federal Practice*, Section 60.27(1) at 346–347 (2d ed.), commenting with respect to the federal counterpart rule. This is a "catchall" category. As noted in *Court Invest. Co. v. Perillo*, 48 *N.J.* 334, 341, 225 *A.2d* 352 (1966):

> No categorization can be made of the situations which would warrant redress under [the "catchall" category] ... [T]he very essence ... is its capacity for relief in exceptional situations. And in such exceptional cases its boundaries are as expansive as the need to achieve equity and justice.

A basis for granting plaintiffs' motion for a trial *de novo* may be found in both the "excusable neglect" and the "catchall" grounds.

A footnote at page 372, 500 *A.2d* 1085 of *Mazakas v. Wray, supra,* raises an interesting question. The footnote addresses the grounds for opposing a motion for confirmation of an

arbitration award, expressing a conclusion contrary to that in this opinion. In pertinent part the footnote reads:

> If the arbitration itself is challenged on an objection to confirmation, as opposed to a motion for a *de novo* trial, *N.J.S.A.* 2A:24–8 (governing the vacation of an arbitrator's award and direction of a rehearing) provides well-defined standards. See *N.J.S.A.* 39:6A–31 incorporating these standards by reference.

If this is intended to express the view that, on an application for confirmation, only the statutory grounds for objection are available, this opinion would disagree. While a trial court is bound by the decisions of the Appellate Division, it need not follow *dictum.* The statute, *N.J.S.A.* 39:6A–31, is inapplicable by its own language. It applies only to actions taken by a party "within 30 days of filing of the arbitration decision with the court," and thus does not apply to "an objection to confirmation" referenced in the footnote, because a motion for confirmation may not be made until after the expiration of the 30 day period. Furthermore, the statute makes no reference to confirmation. It applies by its terms only to "modification or vacation of the award."

Even if the statute could be interpreted to apply to a motion to confirm an award *after* the expiration of the 30 days, it would appear that the Appellate Division did not intend, by the footnote, to indicate that the Legislature's incorporation in *N.J.S.A.* 39:6A–31 of the standards in *N.J.S.A.* 2A:24–8 was to the exclusion of the additional grounds found in *R.* 4:50–1. Two things support this conclusion. First, such legislation, so interpreted, would probably be unconstitutional as infringing upon the exclusive right of the Supreme Court to make rules governing the practice and procedure in all courts. *Winberry v. Salisbury,* 5 *N.J.* 240, 74 *A.2d* 406 (1950), *cert. denied,* 340 *U.S.* 877, 71 *S.Ct.* 123, 95 *L.Ed.* 638 (1950); *N.J. Const.* art. VI, section 2, para. 3. The second is that such an interpretation would be illogical. "[S]tatutes are to be read sensibly rather than literally and the controlling legislative intent is to be presumed as 'consonant to reason and good discretion.'" *Schierstead v. Brigantine,* 29 *N.J.* 220, 230, 148 *A.2d* 591 (1959). Our Supreme Court has further held that "[i]nterpretations which

lead to absurd or unreasonable results are of course to be avoided." *State v. Gill,* 47 *N.J.* 441, 444, 221 *A.*2d 521 (1966).

The statute speaks only of opposition to a motion for confirmation and thus does not govern a motion for leave to file a demand for trial *de novo* beyond the 30 day limit. Notwithstanding that, the issue to be decided on each of those motions is identical. Were the statutory grounds to be the exclusive basis upon which to object to a motion to confirm, the result in a given case might be different depending upon which party filed the motion. Thus, hypothetically, if a plaintiff moved to confirm and a defendant objected, the statutory grounds, and not *R.* 4:50-1, would govern; whereas, if defendant moved for a trial *de novo* and plaintiff objected, *R.* 4:50-1 would provide the applicable standard. Since *R.* 4:50-1(f) necessarily includes the grounds found in *N.J.S.A.* 2A:24-8, it is appropriate to construe *N.J.S.A.* 39:6A-31 as also allowing the broader grounds for relief found in *R.* 4:50-1.

The determination of this motion, made pursuant to *R.* 4:50-1, is addressed to the sound discretion of the trial court. *Hodgson v. Applegate,* 31 *N.J.* 29, 155 *A.*2d 97 (1959); *In re the Adoption of Indian Child,* 219 *N.J.Super.* 28, 529 *A.*2d 1009 (App.Div.1987), *aff'd,* 111 *N.J.* 155, 543 *A.*2d 925 (1988). A process of balancing of the equities is obviously required. In a case involving a somewhat comparable motion to that now before the court, one to vacate a default judgment, our Supreme Court stated that such an application is to be "viewed with great liberality, and every reasonable ground for indulgence is tolerated to the end that a just result is reached." *Marder v. Realty Constr. Co.* 84 *N.J.Super.* 313, 319, 202 *A.*2d 175 (App.Div.1964), *aff'd,* 43 *N.J.* 508, 205 *A.*2d 744 (1964). An equitable, although not dispositive consideration, is that a denial of plaintiffs' motion will forever bar plaintiffs from their traditional right to a trial by jury; whereas, a denial will subject defendant only to the loss of an award generally understood to be non-binding, while preserving its right to present the defense to a jury for decision.

As earlier stated, defendant's right to an order confirming the arbitrators' award and plaintiffs' right to a trial *de novo*, must be determined on the basis of the conclusion which plaintiffs' attorney reached, under these unusual circumstances, as to what his obligation was in representing his clients and whether that conclusion was a reasonable one. It is illogical that he would have agreed to a dismissal of his clients' case as a final adjudication of their claims. In light of the circumstances under which the award was entered and the agreement to negotiate further, he did not anticipate that defendant's attorney would hold him to the possibly unnecessary requirement of filing a *de novo* demand and paying the $150 fee. This understanding on his part was supported by the testimony of both attorneys that immediately upon being served with a copy of the motion to confirm, he called defendant's attorney to express his indignation over what he believed to be a breach of their agreement, as well as unfair and possibly unethical conduct.

Defendant's attorney argues that, following the hearing, plaintiffs' attorney did not call him to present a settlement demand and advise as to the result of his efforts to compromise the workers' compensation lien. He contends that in the absence of a settlement demand, he could not negotiate. That argument is unpersuasive. Defendant's attorney as well could have called plaintiffs' attorney and advised that he had obtained authority to negotiate a settlement and ask for a demand. Either attorney could have made the first call. The point is that, if defendant's attorney did not intend to negotiate, he could have called plaintiffs' attorney and advised him to file a demand for a trial *de novo*. Instead, he waited in silence until the 30 day period ran and then filed a motion to confirm.

The Appellate Division, in *Mazakas v. Wray, supra,* in ruling on a case involving the late filing of a demand for trial *de novo,* suggested this very circumstance as a basis for granting such a motion, with the following illustration:

For example, if plaintiffs contended that defendants through negotiations lulled them into missing the filing date, a court might determine that defendants should be equitably estopped from raising the 30-day bar and that the petition should be deemed filed *nunc pro tunc.*

[*Id.* 205 *N.J.Super.* at 371–72, 500 *A.*2d 1085.]

Defendant's motion to confirm the award is denied. Plaintiffs may file a demand for a trial *de novo* within 30 days from the date of this order.